UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| CRAIG WILLIAMS,<br>On behalf of himself & all<br>others similarly situated, et<br>al., | )<br>)<br>)<br>) | |
| | ) | Action No. |
| Plaintiffs, | )<br>) | 5:15-cv-306-JMH |
| | ) | **MEMORANDUM OPINION** |
| v. | )<br>) | **AND ORDER** |
| | ) | |
| KING BEE DELIVERY, LLC, and<br>BEE LINE COURIER SERVICES,<br>INC., | )<br>)<br>) | |
| | ) | |
| Defendants. | | |

\*\*\*  \*\*\*  \*\*\*

**I. Introduction**

This matter is before the Court upon Defendants' motion to dismiss Plaintiffs' amended complaint, [DE 29]. Plaintiffs filed a response in opposition, [DE 30], the Defendants filed a reply, [DE 41], and the motion is ripe for decision. The Court has reviewed the matter and, for the following reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

Defendants are in the delivery business and provide delivery services for a range of businesses, including hospitals. Plaintiffs are the individual couriers who load and drive vehicles, delivering retail merchandise to Defendants' customers' businesses. Plaintiffs claim Defendants have unlawfully misclassified them as independent contractors when, in fact, they

are Defendants' employees. Plaintiffs contend this misclassification constitutes violations of the Federal Labor Standards Act ("FLSA"), as well as the Kentucky Wage and Hour Act ("KWHA"), and has deprived them of overtime pay to which they are entitled. Additionally, Plaintiffs claim Defendants violated the Kentucky Act by making deductions from their pay for administrative fees and equipment that Defendants required Plaintiffs to use in the course of their jobs.

Defendants contend Plaintiffs' amended complaint should be dismissed in its entirety because the allegations do not sufficiently allege that Plaintiffs are Defendants' employees and, even if they have, Plaintiffs have failed to state a plausible claim for unpaid overtime wages or any other relief under FLSA or the KWHA. Defendants further argue that some of the relief sought is unavailable under both the FLSA and the KWHA.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the plaintiff's complaint. The court views the complaint in the light most favorable to the plaintiff and "must accept as true well-pleaded facts set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (internal quotation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that

2

is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

### III. Discussion

While employees are guaranteed overtime and minimum wage compensation under the FLSA, independent contractors do not enjoy the Act's protections.  *Keller v. Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015).  Plaintiffs claim that the defendants "jointly require and/or have required" them to sign agreements stating that they are independent contractors in order to receive work.[1]  The Sixth Circuit recognizes, however, that the existence of a contract is not dispositive with respect to employment relationships, as "[t]he FLSA is designed to defeat rather than implement contractual arrangements."  *Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27, 1998 WL 598778, *5 (6th Cir. Aug. 24, 1998) (citing *Real v. Driscoll Strawberry Assoc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("Economic realities, not contractual labels, determine employment status for the remedial purpose of the FLSA.")).  The Supreme Court

---

[1] Although the plaintiffs did not attach these agreements to their complaint, the court may consider them without converting the motion to dismiss to a motion for summary judgment, because the agreements "are referred to in the plaintiff's complaint and are central to [the] claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

has also recognized that businesses are liable to workers for overtime wages even if the company has "put . . . an 'independent contractor' label" on a worker whose duties are that of an employee. *Keller*, 781 F.3d at 806-07 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)).

### A. Plaintiffs Allege Sufficient Facts to Support a Reasonable Inference that They were Employees

The "independent contractor agreements" at issue provide that the contractor (plaintiff) will remain an independent contractor and will use his or her independent judgment and discretion for the most effective and safe manner in conducting delivery services. The agreement goes on to state that the broker ("Kingbee Delivery, LLC") will exercise no direct control over the contractor, nor over the method or means employed by the contractor in the performance of such services, including the selection of routes or order in which deliveries are made. Under the terms of the agreement, the broker has no power as to when the contractor shall work and the contractor is free to set his own work schedule, though the contractor is to notify the broker in writing of the contractor's designated work schedule to avoid interruptions in customer service. The contractor agrees to wear an identification badge or identifying shirt under certain circumstances. The terms of the agreement permit the contractor to concurrently engage in another delivery service, occupation, or business.

The plaintiffs claim that their actual working relationship with the defendants did not and does not correspond with the terms of the agreement.   Specifically, Plaintiffs claim the defendants require them to report to the defendants' facility in Lexington, Kentucky by 4:30 a.m., five days per week to unload and sort merchandise.   Further, they claim that Defendants provide them with delivery manifests, requiring deliveries to be made at certain times.   They claim that they are required to wear uniforms and that they must carry GPS scanners to log their deliveries every day.   Plaintiffs claim that Defendants use this information to keep track of Plaintiffs' progress throughout the day and that Defendants contact Plaintiffs if Plaintiffs fall behind schedule.

Applying the "economic-reality test," the court must determine whether Plaintiffs have articulated a sufficient factual basis to reasonably infer that the plaintiffs "are those who as a matter of economic reality are dependent upon the business to which they render service." *Keller*, 781 F.3d at 807 (quotation omitted). Plaintiffs' complaint must plead factual content that gives rise to more than a "sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 679.   The plausibility standard is not "akin to a probability requirement," but it requires more than a sheer possibility that Plaintiffs are employees, rather than independent contractors, and that Defendants have committed a violation of the FLSA or KWHA, as alleged. *See id.*

In applying the economic-reality test, the Sixth Circuit considers several factors, including the degree of the alleged employer's right to control the manner in which the work is performed. *Keller*, 781 F.3d at 813–14. Plaintiffs aver that the Defendants had a great deal of control over the manner in which their work was performed—from the time they were required to report to the Lexington facility in the morning to the times that deliveries had to be made. Defendants required Plaintiffs to wear uniforms and Defendants kept track of Plaintiffs' work progress throughout the day through the use of GPS devices. Additionally, based on Plaintiffs' claims for overtime wages, Plaintiffs have raised a question as to whether Plaintiffs and Defendant had a *de facto* exclusive relationship, as Plaintiffs' work schedules presumably would not have allowed them to perform any outside work regardless of what their contracts said. *See id.* at 808.

Based on the foregoing, Plaintiffs have pled sufficient factual content to permit the reasonable inference that they were/are Defendants' employees, and not independent contractors.

### B. Plaintiffs' Claim that Defendants were Joint Employers

The court now turns to the issue of Plaintiffs' purported joint employment by King Bee and Bee Line. Defendants, in their joint motion to dismiss, contend that the Plaintiffs have failed to make any substantive allegations against Bee Line and have otherwise failed to demonstrate that any of the alleged wrongful

6

conduct is attributable to Bee Line. While there is no dispute that Plaintiffs made deliveries for King Bee, Defendants contend that Plaintiffs have failed to articulate that they had any type of working relationship with Bee Line and, thus, the claims against Bee Line must be dismissed.

Both King Bee and Bee Line are headquartered in Louisville, Kentucky, and have the same registered agent. According to the amended complaint, Bee Line is a listed member/manager in King Bee's annual corporate filings. Additionally, Plaintiffs aver, "[o]n information and belief, Bee Line owns or controls King Bee's operation in Kentucky and the neighboring states." Plaintiffs further contend that all deliveries executed by Plaintiffs have been "jointly managed and supervised by Bee Line Courier Service and King Bee Delivery." Plaintiffs aver that, in 2013, Bee Line purchased Regional Express, a courier service for which Plaintiffs delivered pharmaceuticals. Plaintiffs go on to claim that the dispatchers supervising their deliveries were jointly employed by both King Bee and Bee Line and, that when Plaintiffs called the dispatch office, they were told they had reached the offices of Bee Line. Finally, Plaintiffs contend that when they made pharmaceutical deliveries, the deliveries were for King Bee. When they made non-pharmaceutical deliveries, they were for Bee Line. With respect to the non-pharmaceutical deliveries, Plaintiffs were instructed to inform customers that they were working for Bee Line

and the corresponding paperwork indicated that the Plaintiffs represented Bee Line Courier Service.

The Court finds that Plaintiffs have articulated sufficient facts to survive Defendants' motion to dismiss based on the argument that they are not joint employers. While the Sixth Circuit has not articulated a test for identifying a joint employer for FLSA purposes, it has considered three factors, in the context of Title VII, in determining whether an entity may be considered a joint employer: (1) exercise of the authority to hire, fire, and discipline; (2) control over pay and insurance; (3) and supervision. *See Bacon v. Subway Sandwiches & Salads, LLC*, 2015 WL 729632 (E.D. Tenn. 2015). As discussed above, both Defendants have the same registered agent and, reportedly, Bee Line owns or controls King Bee's operation in Kentucky and the neighboring states. Further, Plaintiff avers, King Bee has been listed as a manager in Bee Line's corporate filings. Plaintiffs claim that they make deliveries for both Defendants, but that the King Bee deliveries are limited to pharmaceuticals. The court is convinced that these facts create a plausible claim that Defendants were Plaintiffs' joint employers.

### C. Plaintiffs' Allegations of Overtime Work without Pay

Next, Defendants claim that Plaintiffs' claims must be dismissed in their entirety because Plaintiffs have failed to allege any workweek in which they worked in excess of forty hours

8

for either King Bee or Bee Line. Because the Plaintiffs' have stated a plausible claim that King Bee and Bee Line acted as a joint employer, the court must consider them jointly. *See* 29 C.F.R. § 791.2 ("If the facts establish that the employer is employed jointly by two or more employers, . . . joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].").

Defendants allege that Plaintiffs have not pled, with sufficient detail, the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week. Plaintiffs aver, however, that each of them worked at least 42.5 hours most of the weeks they made deliveries for Defendants without receiving any overtime pay. The amended complaint alleges, in particular, that Plaintiff Craig Williams regularly worked more than 75 hours per week without receiving any overtime pay. Defendants attempt to seize upon a perceived technical deficiency in the pleading, arguing that Plaintiffs fail to specify who they were working for during the time in question. It is clear from a logical reading of the amended complaint, however, what Plaintiffs allege—that they worked in excess of 40 hours per workweek *for Defendants* and were not compensated properly under the FLSA and the KWHA. While the independent contractor agreements permitted Plaintiffs to take on other jobs, there is no indication that Plaintiffs actually

provided services for anyone other than the Defendants. Accordingly, the Court will deny Defendants motion to dismiss this portion of Plaintiffs' claims.

### D. Unlawful Deduction Claim

Defendants' next argument is that Plaintiffs' unlawful-deduction claim fails as a matter of law because Plaintiffs expressly authorized deductions in the Independent Contractor Agreements. Kentucky Revised Statutes § 337.060(1) provides that, generally, an employer may withhold from an employee's pay "any portion of an employee's wage when . . . a deduction is expressly authorized in writing by the employee to cover insurance premiums, hospital and medical dues, or other deductions not amounting to a rebate or deduction from the standard wage arrived at by collective bargaining or pursuant to wage agreement or statute." Section 337.060(2)(e) provides that employers may not deduct for losses due to damage to property unless such losses are attributable to an employee's willful or intentional disregard of the employer's interest. The Independent Contractor Agreements provide as follows:

> CONTRACTOR authorizes BROKER to request deductions from the CONTRACTORS compensation each pay period where applicable:
>
> 1.    Expediting fees, bond fees, customer loss or damage claims, or any other expenses incurred by BROKER on behalf of CONTRACTOR.
> 2.    Lease expense for the lease of communications equipment from BROKER.

      3.    Cost for shirts, jackets, hats, ID badges or other equipment leased or purchased directly from BROKER.
      4.    Administration Fee.

The Plaintiffs argue that, although they agreed to these deductions in writing, they are unlawful because they constitute rebates or other unlawful deductions under KRS § 337.060(1). Further, Plaintiffs argue, Defendants imposed deductions that were related to property damage not caused by any willful or intentional disregard of Defendants' interest. With respect to the damaged property claim, however, Plaintiffs have provided no supporting facts whatsoever, and a recital of the elements of the statute will not do. Plaintiffs have failed to provide any legal support or otherwise explain why the other deductions were forbidden under KRS § 337.060(1), particularly because Plaintiffs' gave their written consent. These conclusory allegations cannot withstand Defendants' motion to dismiss and, thus, will be dismissed at this time.

### E. Williams' Private Cause of Action Under KRS 337.990(9)

In Count V of the Complaint, Plaintiffs allege the Defendants retaliated against Craig Williams pursuant to KRS 337.990(9) when they terminated him after he complained about his misclassification as an independent contractor and non-payment of overtime wages. That provision provides that "[a]ny employer who discharges or in any other manner discriminates against any employee because the employee has made any complaint . . . that he

or she has not been paid wages in accordance with [KRS Chapter 337] shall be assessed a civil penalty. . . ." Defendants argue the claim must be dismissed because there is no private right of action under KRS 337.990(9).

The only portion of the Kentucky Wages and Hours Act that expressly provides a private right of action is § 337.385, which states that employers are liable to employees for unpaid wages and overtime compensation. Section 337.990, titled "Penalties" mandates fines, ranging from $100 to $1000, to be enforced by the Secretary of the Labor Cabinet. *See* KRS 336.985. Section 337.990(9) imposes a fine on any employer who discharges or otherwise discriminates against an employee for complaining that the employer has violated sections of the KWHA. Because the Act itself does not create a private right of action for enforcement of this provision, the Plaintiffs' only possible avenue of recovery is under KRS 446.070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

KRS 446.070 creates a private right of action for the violation of any statute, so long as the plaintiff belongs to the class to be protected by the statute. *State Farm Mutual Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 117–18 (Ky. 1988). A private right of action generally is not available, however, where the

statute "both declares the unlawful act and specifies the civil remedy *to the aggrieved party. . . .*" *Ezell v. Christian Cty., Ky.*, 245 F.3d 853, 856 (6th Cir. 2001) (quoting *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)). Taking Plaintiffs' allegations as true, there is no doubt they are within the class intended to be protected by the KWHA. And while KRS 377.990(9) provides for a civil penalty, it does not provide a civil remedy to the aggrieved party, as the civil penalty provides no redress to the aggrieved party. *See Ezell*, 245 F.3d at 856 ($100 penalty prescribed by KRS 179.990 was not a remedy to the aggrieved party for the purposes of KRS 446.070). Defendants rely on *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 571 (Ky. App. 2005), but the statute at issue there provided administrative procedures for reinstatement of Benningfield's job. The court found that Benningfield did not have a private right of action under § 446.070 because the administrative procedures constituted a civil remedy. The Kentucky Wage and Hour Act provides no such remedy for workers who have suffered retaliation.

Defendants also argue that because KRS 337.385 expressly provides a private right of action for unpaid wages and overtime compensation, the Legislature's intent to exclude all others should be inferred. As the Kentucky Court of Appeals stated in *Reeder*, however, it can be assumed that the Kentucky General Assembly was well aware of KRS 446.070 when it enacted the KWHA.

13

There is no reason that the plain language of these two statutes cannot be read in harmony.

The Court refuses to obfuscate "the very essence of KRS 446.070, which was enacted specifically so that the mere existence of a statutory penalty will not bar an individual's right to private recovery of damages." *England v. Advance Stores Co. Inc.*, 263 F.R.D. 423, 440 (W.D. Ky. 2009). Accordingly, applying the law of *Grzyb* and *Reeder*, the court finds that KRS 446.070 allows a private right of action under section 337.990(9) for damages caused by an employer's violation of the statute.[2] Defendants' motion to dismiss Williams' retaliation claim will be denied.

### F. Representative Actions Under KRS 337.385

Defendants contend that Kentucky law bars representative actions under KRS 337.385. This Court agrees with the decision in *Green, et al. v. Platinum Restaurants Mid-America LLC*, 2015 U.S. Dist. LEXIS 171647 (W.D.K.Y. Feb. 24, 2015) that KRS 337.385 does not permit suits in a representative capacity and that Rule 23 does not override substantive Kentucky law. The Court will dismiss Plaintiffs' claims pursuant to KRS 337.385 insofar as they are in a representative capacity.

The question presented is whether KRS 337.385 allows plaintiffs to sue in a representative capacity. "[F]ederal courts

---

[2] See section G, *infra*, for a discussion of who may pursue the statutory penalties pursuant to KRS 337.990.

must apply state law 'in accordance with the then controlling decision of the highest state court.'" *Ziegler v. IBP Hog Mkt., Inc.*, 429 F.3d 509, 517 (6th Cir. 2001)(quoting *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941)); *see Erie R.R. v. Tompkins*, 304 U.S. 64, 68 (1938).   The Kentucky Supreme Court has not addressed this issue.  "If the state supreme court has not yet addressed the issue presented, [the federal court] must predict how the court would rule by looking to all the available data.  'Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state] Supreme Court would decide otherwise.'" *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)(quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir.1995))(other internal citations omitted).

The Kentucky Court of Appeals has considered this issue twice, both times ruling that KRS 337.385 does not permit suits in a representative capacity; however, the Supreme Court of Kentucky granted review for the most recent case.  *See Toyota Motor Mfg. Kentucky, Inc. v. Kelley*, 2013 WL 6046079 (Ky. App. Nov. 15, 2013) and *McCann v. Sullivan Unvi. Sys.*, 2015 Ky. App. Unpub. LEXIS 862 (Feb. 27, 2015) *review granted by McCann v. Sullivan Univ. Sys.*, 2015 Ky. LEXIS 1970 (Ky. Oct. 21, 2015).   Thus, the Court finds

limited authoritative value in these cases while the issue is on appeal to the Supreme Court of Kentucky.

The Court can, however, predict how the Supreme Court of Kentucky will rule on this question based on the plain language of the statute at issue.  The statute provides:

> (1) Except as provided in subsection (3) of this section, any employer who pays any employee less than wages and overtime compensation to which such employee is entitled under or by virtue of KRS 337.020 to 337.285 shall be liable to such employee affected for the full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court.
>
> (2) If, in any action commenced to recover such unpaid wages or liquidated damages, the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he or she had reasonable grounds for believing that his or her act or omission was not a violation of KRS 337.020 to 337.285, the court may, in its sound discretion, award no liquidated damages, or award any amount thereof not to exceed the amount specified in this section. Any agreement between such employee and the employer to work for less than the applicable wage rate shall be no defense to such action. *Such action may be maintained in any court of competent jurisdiction by any one (1) or more employees for and in behalf of himself, herself, or themselves.*

16

KRS 337.385 (emphasis added).  This Court agrees entirely with Judge Heyburn's analysis of the statute's language in *Green, et al. v. Platinum Restaurants Mid-America LLC*, and could not state it more succinctly:

> The final clause in KRS 337.385(2)—italicized above—identifies who can sue under the statute. A natural reading of the sentence is:
>
> (1)  any one employee may maintain an action for and in behalf of himself;
>
> (2)  any one employee may maintain an action for an in behalf of herself; or
>
> (3)  any two or more employees may maintain an action for and in behalf of themselves.
>
> None of these three readings supports Plaintiffs' position that employees may sue *for and in behalf of other employees similarly situated.* . . . [T]he plain language of the statute does not allow for a lawsuit in a representative capacity.  Absent other Kentucky authority, this Court believes that Kentucky courts are likely to follow the plain language of the statute.

*Green,* 2015 U.S. Dist. LEXIS 171647 at 12.

Defendants correctly point out that the Kentucky statute was modeled after the federal Fair Labor Standards Act (FLSA), but the Kentucky legislature specifically excluded the words "and other employees similarly situated" found in the FLSA in the section authorizing causes of action.  29 U.S.C. § 216(b).  Furthermore, KRS § 337.385 has been amended three times since its enactment in

1974, yet the legislature has never amended the statute to provide for class or collective actions.

Plaintiffs argue Fed. R. Civ. P. 23 and the Rules Enabling Act circumvent the state statute and permits them to proceed in a representative capacity.  The Supreme Court addressed the issue of whether a plaintiff, in federal court in a diversity action, could proceed with a Rule 23 class action claim where the New York statute at issue prohibited penalties in a class action suit.  The result was a fragmented decision in which four justices dissented. Four of the remaining justices concurred, holding that Rule 23 applied to state law as applied in federal court, even when "its effect is to frustrate a state substantive law (or a state procedural law enacted for substantive purposes)."  *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, 559 U.S. 393, 409 (2010).  Justice Stevens wrote a separate opinion, concurring in part and concurring in the judgment.

Justice Scalia, writing for the plurality, applied a two-prong test to determine whether Rule 23 applied: "first, determining whether the federal and state rules can be reconciled (because they answer different questions), and second, if they cannot, determining whether the Federal Rule runs afoul of § 2072 [of the Rules Enabling Act]." *Shady Grove* at 411.  The plurality and Justice Stevens agreed that the New York state law and Rule 23 were in conflict, but disagreed on how to resolve the second prong

18

of the analysis.  The plurality decided the case based on the fact that Rule 23 is procedural, while Justice Stevens's concurrence stated that the analysis should turn on the procedural nature of the state law, and when a state procedural rule is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right[,]" the federal law cannot preempt the state statute due to the limitations in the Rules Enabling Act. *Id.* at 423; 28 U.S.C. § 2072(a) and (b)(No federal rule of procedure shall "abridge, enlarge or modify any substantive right.").

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193(1977)(citations and internal quotation marks omitted).  While the Sixth Circuit has not definitively ruled that Justice Stevens's concurrence is controlling (*see Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 462-65 (6th Cir. 2014), in which the Circuit utilized both the plurality and concurrence approach), numerous courts that have addressed this issue determined that Justice Stevens' concurrence was the most narrow holding, and, thus, controlling. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10 Cir. 2011); *Davenport v. Charter*

*Communications, LLC*, 35 F.Supp.3d 1040, 1049 (E.D. Mo. 2014); *In re TD Bank, N.A.*, 2015 WL 8493979 (Dec. 10, 2015); and *In re Packaged Ice Antitrust Litigation*, 779 F.Supp.2d 642, 660 (E.D. Mich. 2011)("Courts interpreting the Shady Grove decision, and searching for guidance on this issue, have concluded that Justice Stevens' concurrence is the controlling opinion by which interpreting courts are bound."). *But see In re Hydroxycut Marketing and Sales Practices Litigation*, 299 F.R.D. 648 (S.D. Cal. 2014)("The Court is not convinced that Justice Stevens' opinion is the 'logical subset' of the plurality's or that Stevens' opinion represents a common denominator. Where there is no such narrow opinion, the only binding aspect of the splintered decision is its specific result. Thus, *Shady Grove* does not provide the Court with much guidance.")(internal citation omitted).

For the foregoing reasons, the Court believes the Kentucky courts are likely to hold that KRS § 337.385 does not permit suits in a representative action. The Court is also in agreement with the cases cited above, that allowing Fed. R. Civ. P. 23 to override KRS 337.385 clear exclusion of representative actions would "abridge, enlarge or modify" a substantive state right in violation of the Rules Enabling Act. Defendants' motion to dismiss Plaintiffs' KRS § 337.385 representative claims will be granted.

## G. Civil Penalties and Punitive Damages

### i. Civil Penalties

Defendants argue Plaintiffs have no standing to seek the civil penalties in KRS 337.990.  The Court agrees.  As the Court noted in section E, *supra*, the Secretary of the Labor cabinet is tasked with enforcing civil penalties in KRS 337.990, pursuant to KRS 336.985.  Plaintiffs "ignore[] the fundamental distinction between 'penalties' and 'remedies.' The penalty statute, KRS 337.990, is just that—a statute enacted to impose a punishment upon employers who violate the protections statutorily created by KRS Chapter 337.  Nowhere in the fourteen subsections of KRS 337.990 is there any provision for an aggrieved employee to personally recover damages for an employer's violation of the Kentucky Wages and Hours Act." *England v. Advance Stores Co. Inc.*, 263 F.R.D. 423, 440 (W.D. Ky. 2009)(internal citation omitted)(holding that the plaintiff could not directly recover under KRS 337.990, but could pursue recovery under KRS 446.070, similar to the case at bar). Plaintiffs concede the Secretary of Labor is tasked with enforcing and compromising "the amount of penalties imposed upon an employer." [Pl.'s Opp. to Def.'s Mot. Dis., pg. 38.]  Pursuant to KRS 336.985, only the Secretary of the Labor Cabinet may enforce the civil penalties in KRS 337.990 against an employer; pursuant to KRS 446.070, as noted above, a plaintiff may seek to recover damages caused by the employer's violation of these sections (not statutory penalties) where the statute does not otherwise provide for a private cause of action.  Accordingly, Defendants' motion to

21

dismiss Plaintiffs' claims for civil penalties pursuant to KRS 337.990 will be granted.

### ii.  Punitive Damages Pursuant to FLSA

Finally, Defendants argue Craig Williams' request for punitive damages must be dismissed because "neither the FLSA nor KRS 337.385 permits an award of punitive damages." [Def.'s Memm. Supp. Mot. Dis., pg. 37.]

Plaintiff Williams claims he is entitled to punitive damages for his alleged unlawful, retaliatory termination in violation of 29 U.S.C. § 215(a)(3) and KRS 337.990(9).  The Court must analyze the availability of punitive damages under each statute separately.

29 U.S.C. § 216(b) sets forth the penalties for employers who engage in retaliatory discharge prohibited by § 215(a)(3):

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b)

There is a split of authority among the circuits as to whether punitive damages are available under the provision for "legal or equitable relief," quoted above.  The Sixth Circuit has not ruled on this issue.  This Court takes the same approach as the Court

22

in *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000) and holds that the retaliation provision of the FLSA does not provide for punitive damages.  In *Snapp*, the Eleventh Circuit examined the plain language of the statute in an effort to determine whether punitive damages are within the purposes the statute seeks to effectuate. The Court noted the statute enumerates several types of relief that may be available to the plaintiff, such as "employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages" but does not limit courts to these options. *Id*. at 934.  The Court continued, concluding:

> Although it is clear that Congress did not limit a court in retaliation cases to the enumerated forms of relief, there is something that all of the relief provided in section 216(b) has in common: it is meant to *compensate* the plaintiff. Awards of unpaid minimum wages, unpaid overtime compensation, employment, reinstatement, promotion, and the payment of wages lost all attempt to put the plaintiff in the place she would have been absent the employer's misconduct. Even the liquidated damages provision is compensatory in nature. "[T]he liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages."
>
> Given that the evident purpose of section 216(b) is compensation, we reject plaintiff's argument that "legal relief" includes punitive damages.

*Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934 (11th Cir. 2000)(quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).  The majority in *Snapp* noted that Congress provided for punitive sanctions in the preceding section of the statute, which subjects any person who violates FLSA's prohibition on retaliation to a fine, imprisonment, or both.  *See* 29 U.S.C. § 216(a).

The Seventh Circuit, by contrast, held that punitive damages are available under section 216(b) for retaliation claims.  The Seventh Circuit stated that "legal relief" is a "term commonly understood to include compensatory and punitive damages." *Travis v. Gary Comty. Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir. 1990).  The Seventh Circuit reasoned that when Congress amended the remedies language in section 216(b) in 1977 from "an additional equal amount as liquidated damages" to "including without limitation employment, reinstatement or promotion and the payment of wages lost and an additional equal amount as liquidated damages[,]" the change was intended to include punitive damages in the damages "without limitation." *Id*. at 111-12.  The Court concluded that "Congress could limit these damages, but the 1977 amendment does away with the old limitations without establishing new ones.  Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge." *Id*.  The Eleventh Circuit concluded the opposite, reasoning that "Congress did not 'leave out' punitive sanctions in

24

the FLSA; it merely addressed them in a different manner [in the fine and imprisonment provided for in section 216(a)]." *Snapp* at 939.

This Court finds the reasoning in *Snapp* persuasive. In particular, this Court agrees with the concurring opinion, in which Judge Carnes notes that criminal sanctions in a statute do not foreclose the possibility of punitive damages as the majority seems to suggest. The concurring opinion agreed with the majority, as does this Court: Congress could have included punitive damages in the list of damages but chose not to, but instead solely made broad compensatory relief available to plaintiff. Accordingly, Plaintiff Williams' prayer for relief in the form of punitive damages under the FLSA will be dismissed.

### iii. Punitive Damages Pursuant to KWHA

Plaintiff Williams requests punitive damages for retaliatory discharge pursuant to KRS 337.990(9). Defendants cite to one case in support of their position that the KWHA does not permit an award of punitive damages. Plaintiff Williams correctly states that Defendants' authority is not on point;[3] however, Plaintiff Williams does not offer any authority to support his position, either.

---

[3] Defendants cite *Bowman v. Builder's Cabinet Supply Co.*, 2006 WL 2460817 at *10 (E.D. Ky. Aug. 23, 2006) for the proposition that "punitive damages are not available under the FLSA or Kentucky's wage and hour statute." That case, however, did not involve a retaliation claim. Plaintiff repeatedly states he seeks punitive damages pursuant to KRS 337.990(9).

Plaintiff Williams seeks punitive damages pursuant to KRS 337.990(9), which states:

> Any employer who discharges or in any other manner discriminates against any employee because the employee has made any complaint to his or her employer, to the commissioner, or to the commissioner's authorized representative that he or she has not been paid wages in accordance with KRS 337.275 and 337.285 or regulations issued thereunder, or because the employee has caused to be instituted or is about to cause to be instituted any proceeding under or related to KRS 337.385, or because the employee has testified or is about to testify in any such proceeding, shall be deemed in violation of KRS 337.275 to 337.325, KRS 337.345, and KRS 337.385 to 337.405 and shall be assessed a civil penalty of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000).

KRS 337.990(9).  The plain language of the statute does not permit an award of punitive damages to a plaintiff.  The Court is unaware of any case law which has held otherwise, and neither party cited to any controlling law.[4]  Based on the plain language of the

---

[4] There is a Court of Appeals of Kentucky case in which the plaintiff alleged "failure to pay wages/commissions in violation of KRS 337.385, retaliatory discharge in violation of KRS 337.990(9), and punitive damages[]" at trial. *Burton v. Appriss, Inc.*, 2016 WL 675807, at *2 (Ky. Ct. App. Feb. 19, 2016). The trial court granted a directed verdict in favor of the defendant employer on the retaliatory discharge claim.  The Court of Appeals opinion does not clarify whether the plaintiff in *Burton* sought punitive damages based on retaliatory discharge or some other claim; however, it is reasonable for this Court to assume that once the trial court directed verdict in favor of the defendant on the retaliation claim, no punitive damages followed, even if the trial court would have otherwise permitted them under KRS 337.990(9) (and there is no indication in the opinion whether the trial court intended to permit an award of punitive damages on that claim).  Thus, *Burton* offers no guidance to the instant situation.

26

statute, Plaintiff Williams' prayer for relief in the form of punitive damages pursuant to KRS 337.990(9) will be dismissed.

## IV.  Conclusion

For the foregoing reasons, and the Court being sufficiently advised, **IT IS ORDERED** that Defendants Motion to Dismiss be, and the same hereby is, **GRANTED IN PART** and **DENIED IN PART**.

This the 8th day of August, 2016.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge