UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| CRAIG WILLIAMS, on behalf of himself and all others similarly situated, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 5:15-cv-306-JMH |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| KING BEE DELIVERY, LLC, and BEE LINE COURIER SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

\*\*\*

## I. INTRODUCTION

Plaintiffs Craig Williams, John Williams, and Fred Berry filed this action, on behalf of themselves and all others similarly situated, against Defendants King Bee Delivery, LLC and Bee Line Courier Services, Inc., seeking redress for violations of the Fair Labor Standards Act ("FLSA) and Kentucky Wage and Hour Act ("KWHA"). Plaintiffs now move the Court to conditionally certify their FLSA claim for unpaid overtime wages as a collective action. [DE 32]. Meanwhile, Defendants urge the Court to dismiss Plaintiffs' claim for unlawful deductions in violation of the KWHA. [DE 62]. Both Motions are now fully briefed and ripe for the Court's review. [DE 59, 63, 66, 69]. For the reasons stated herein, both Motions are hereby **GRANTED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendants provide delivery services to pharmacies and hospitals located in Kentucky, Ohio, and Indiana.[1] [DE 58, p. 3, ¶ 13]. As part of their business, Defendants retain delivery drivers to load, transport, and deliver pharmaceuticals and other materials to their clients. [*Id.*]. Plaintiffs worked as delivery drivers for Defendants, operating out of their Kentucky warehouses.[2] [*Id.* at p. 2, ¶ 7-10].

An Independent Contractor Agreement governed the relationship between Plaintiffs and Defendants. [DE 33-1, 33-2, 33-3]. Plaintiffs agreed not to hold themselves out as "employee[s] or partner[s] of [Defendants] or as having authority to represent [Defendants], but only as [] independent delivery contractor[s] to [Defendants] for the purpose of performing this Agreement." [*Id.*]. Defendants in turn, relinquished the right to "exercise any direction, control or determination over the manner, means or methods of [Plaintiffs'] activities and objectives in operating [their] business" or restrict Plaintiffs from "being concurrently

---

[1] In their Amended Complaint, Plaintiffs characterized King Bee and Bee Line as joint employers, noting that the two businesses share a registered agent, office space, and dispatchers. [DE 23]. Defendants urged the Court to dismiss Bee Line from this action, arguing that Plaintiffs had not made any substantive allegations against it. [DE 29]. The Court denied this request, finding that Plaintiffs' joint employment claim was plausible. [DE 43].

[2] Plaintiff Craig Williams worked at Defendants' Lexington facility from 2009 to 2014. [DE 58, p. 2, ¶ 7]. Defendants hired Plaintiff John Williams in April 2013. [*Id.* at p. 2, ¶ 8]. He continues to work at the Lexington facility. [*Id.*]. Plaintiff Fred Berry also worked at the Lexington facility from June 2014 to June 2015. [*Id.* at p. 2, ¶ 9].

or subsequently engaged in another delivery service business or other occupation."[3]  [*Id.* at 6].

Plaintiffs typically arrived at Defendants' warehouses, along with fifteen to twenty other delivery drivers, between 4:30 a.m. and 4:45 a.m.  [DE 33-3, 33-6].  Each driver received a manifest from Defendants, listing the deliveries that they were supposed to make that day and a time window for making each delivery.  [*Id.*]. Plaintiffs then loaded their trucks with the appropriate packages and began their daily routes.  [*Id.*].  They carried GPS trackers with them throughout the day so that Defendants could track their progress.  [*Id.*].

Defendants did not compensate Plaintiffs based on the number of hours worked.  [*Id.*].  Instead, Plaintiffs received a flat rate per delivery route or a sum based on the number of deliveries made per route.[4]  [*Id.*].  This compensation scheme did not vary when Plaintiffs worked more than forty hours per week, as they often did. [*Id.*].

In November 2014, Craig Williams spoke with Rusty Quill, an Operations Managers in Lexington, about his independent contractor

_____

[3] While Plaintiffs could work for other delivery services, the Agreement prohibited them from "deliver[ing] or attempt[ing] to divert any delivery order received through [Defendants] to a competitive delivery service."  [*Id.*].
[4] Under the terms of the Agreement, Plaintiffs furnished their own vehicle and cell phone; bore the costs of fuel, repairs, and motor vehicle insurance; and wore King Bee shirts and badges while making deliveries.  [DE 33-3 at 2-3]. Defendants routinely deducted expediting fees, administrative fees, customer loss or damage claims, lease expenses for GPS tracking devices, and costs for King Bee apparel from Plaintiffs' paychecks.  [*Id.* at 4-5].

classification and showed him a workers'-rights pamphlet produced by Kentucky Jobs for Justice. [*Id.* at p. 9, ¶ 43-44]. Quill later mailed this pamphlet to Defendants' headquarters in Louisville. [*Id.*]. On December 2, 2014, Williams discussed this issue with Quill and Jay Baumert, another Operations Manager, via telephone. [*Id.* at p. 9, ¶ 45]. Williams stated that he would file a complaint with a government agency if Defendants did not begin treating him like an employee. [*Id.*]. About ten minutes later, Norman Seger, President of Bee Line and Manager of King Bee, contacted Williams and informed him that Defendants would no longer need his services.[5] [*Id.*].

On October 14, 2015, Plaintiffs filed the instant action, asserting the following claims: (1) unlawful deductions in violation of the KWHA; (2) unpaid overtime wages in violation of the FLSA; (3) unpaid overtime wages in violation of the KWHA; (4) retaliation in violation of the FLSA on behalf of Craig Williams; (5) discrimination in violation of the FLSA on behalf of Craig Williams; and (6) wrongful discharge in violation of public policy on behalf of Craig Williams. [DE 1].

---

[5] According to the record, the United States Department of Labor ("DOL") investigated Defendants' labor practices in 2011. [DE 63-1]. At that time, the DOL's Wage and Hour Division "would not … contest the employer's assertion that these individuals were independent contractors rather than employees." [*Id.*]. However, the DOL investigated Defendants again in 2015 and determined that Defendants "had misclassified [their] drivers as independent contractors." [63-2 at 9]. The investigation was cut short due to the filing of this action. [*Id.*]. It is unknown whether Williams delivered on his promise to file a complaint with a government agency, and if so, whether his complaints spurred the 2015 investigation.

Defendants promptly filed a Motion to Dismiss for Failure to State a Claim. [DE 12]. Plaintiffs rendered that Motion moot by filing an Amended Complaint. [DE 23, 26]. Defendants then renewed their Motion to Dismiss. [DE 29]. Shortly thereafter, Plaintiffs filed a Motion for Conditional Certification of a Collective Action. [DE 32]. The Court granted Defendants' request for an extension of time to respond to Plaintiffs' Motion and tolled the FLSA's statute of limitations during until Defendants filed their Response.[6] [DE 40].

On August 8, 2016, the Court entered a Memorandum Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss. [DE 43]. The Court dismissed Plaintiffs' claim for unlawful deductions in violation of the KWHA, as well as their

---

[6] To be precise, the Court took action in two steps. Defendants argued that Plaintiffs' Motion for Conditional Certification was premature because they had not yet filed an Answer and the Court had not yet entered a Scheduling Order pursuant to Federal Rule of Civil Procedure 16. [DE 37]. Defendants also noted that a ruling on the pending Motion to Dismiss could impact the Motion for Conditional Certification. [*Id.*]. Accordingly, the Court ordered that "Defendants' response to Plaintiffs' motion for conditional certification of a collective action and to provide notice … shall be due seven (7) days after any Answer is due in this matter." [DE 38].

Plaintiffs then filed a Motion for Reconsideration or, in the Alternative, to Toll the Statute of Limitations, explaining that the Court's ruling would have adverse consequences for potential opt-in plaintiffs because the filing of a complaint does not toll the statute of limitations in FLSA cases. [DE 39]. The Court entered an Order tolling the FLSA's statute of limitations "during the extension of time granted to Defendants to respond to Plaintiffs' motion for conditional certification of a collective action and to provide notice." [DE 40].

After the Court issued its Memorandum Opinion and Order, the parties submitted an Agreed Order, stating that Defendants had until September 12, 2016 to file an Answer. [DE 44]. The Court signed this Order. [DE 45]. The parties later agreed, and the Court approved, another extension of time to October 17, 2016. [DE 55, 56]. Defendants filed their Response on October 17, 2016, and Plaintiffs replied on November 7, 2016. [DE 63].

requests for civil penalties and punitive damages under the FLSA and KWHA. [DE 44]. Plaintiffs then filed a Motion for Leave to File a Second Amended Complaint, which the Court granted. [DE 46, 57, 58]. Defendants responded by filing the instant Motion to Dismiss, again attacking Plaintiffs' unlawful deductions claim. [DE 62]. This Motion to Dismiss is now before the Court for review, along with Plaintiffs' Motion for Conditional Certification. [DE 32, 62]. The Court will evaluate each Motion in turn.

### III. ANALYSIS

**A.** *Motion for Conditional Certification*

**i. The Certification Question**

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. § 202(a). Chief among the FLSA's provisions is the overtime wage requirement, which generally obligates "employers to compensate employees for hours in excess of 40 per week at a rate of 1½ times the employees' regular wages." *Id.; see also* 29 U.S.C. § 207(a).

As the above-cited language suggests, "only employees are entitled to overtime and minimum-wage compensation" under the

FLSA. *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (observing that "[t]he FLSA's definition of 'employee' is strikingly broad"); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting that the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles"). "Independent contractors do not enjoy [the] FLSA's protections." *Id.* However, "[t]he Supreme Court has recognized … that businesses are liable to workers for overtime wages even if the company 'put[s] … an "independent contractor" label' on a worker whose duties 'follow[] the usual path of an employee.'"[7]   *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)).

"[A]ny one or more employees" may seek redress for violations of the FLSA by initiating a collective action "on behalf of himself or themselves and other employees similarly situated."  29 U.S.C.

---

[7] To determine whether a business has improperly classified a worker as an independent contractor, rather than an employee, courts apply the "economic-realities" test, which consists of the following six factors: (1) the permanency of the relationship between the parties; (2) the degree of skill required for the rendering of services; (3) the worker's investment in equipment or materials for the task; (4) the worker's opportunity for profit or loss, depending upon his skill; (5) the degree of the alleged employer's right to control the manner in which the work is performed; and (6) whether the service rendered is an integral part of the alleged employer's business. *Id.* at 806-07 (stating that "[n]o one factor is determinative").  The goal of this test is to ascertain whether the worker in question is, as a matter of economic reality, "dependent upon the business to which [he or she] render[s] service." *Keller*, 781 F.3d at 806-07 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)).  This inquiry is a mixed question of law and fact, which may be resolved by the court in some instances and require submission to a jury in others. *Id.* at 804.

In ruling on Defendants' prior Motion to Dismiss, the Court held that Plaintiffs had alleged sufficient facts to support a reasonable inference that they were Defendants' employees.  [DE 43 at 4-6].

§ 216(b).  Similarly situated employees may "opt-into" such suits by "signal[ing] in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (noting that this type of suit "is distinguished from the opt-out approach utilized in class actions under Fed. R. Civ. P. 23").

Certification of FLSA collective actions typically proceeds in two phases. *Comer*, 454 F.3d at 546-47. "[A]t the notice stage, the certification is conditional and by no means final." *Id.* (internal quotations omitted).  "The plaintiff must show only that his position is similar, *not identical*, to the positions held by the putative class members." *Id.* (internal quotations omitted) (emphasis added).  "[T]his determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Id.* (stating further that "authorization of notice need only be based on a modest factual showing") (internal quotations omitted).

"At the second stage, following discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Id.* at 547.  The final-certification decision depends upon "a variety of factors, including the factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and

procedural impact of certifying the action as a collective action." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (internal quotations omitted), *overruled on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

This case sits at the notice stage of the bifurcated-certification process. Plaintiffs ask the Court to conditionally certify their FLSA claim for unpaid overtime wages as a collective action and order notice of the action to all delivery drivers who were classified as independent contractors while working for Defendants, thereby providing these individuals with an opportunity to participate therein. Plaintiffs argue that such action is appropriate because they are similarly situated to the putative class members, having worked as delivery drivers for Defendants and performed the same basic duties under similar circumstances.

In support of this proposition, Plaintiffs Craig Williams and John Williams submitted declarations, detailing their daily routine and describing their compensation scheme. [DE 33-3, 33-6]. They insist that other drivers followed a similar routine and received wages on a similar basis, citing conversations that they had with unidentified drivers at Defendants' warehouses. [*Id.*]. Plaintiffs bolster this assertion with declarations from two opt-in plaintiffs, Kevin Berry and Mark Lafferty, who described a similar experience with Defendants. [DE 33-4, 33-5].

As a threshold matter, Defendants assert that conditional certification is inappropriate because Plaintiffs were properly classified as independent contractors, and thus, were not entitled to overtime wages under the FLSA.  Courts generally do not evaluate the legality of the challenged policy or the applicability of an FLSA exemption at this stage of the certification process.  *See Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1072 (M.D. Tenn. 2015) ("[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at the notice stage) (internal quotations omitted); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 769 (N.D. Ohio 2015) ("It would be inappropriate to consider the merits of defendant's defense at this time, before the record has been developed.").  Because Defendants' argument is premature, the Court need not consider it further.

Defendants next urge the Court to deny Plaintiffs' request for conditional certification because their declarations, composed of conclusory statements and inadmissible hearsay, do not present competent evidence that potential opt-in plaintiffs exist.  While some courts have refused to consider inadmissible evidence at the notice stage, applying "the evidentiary standard for affidavits found in Rule 56(e) of the Federal Rules of Civil Procedure," the majority of courts within the Sixth Circuit "have held that plaintiff's evidence on a motion for conditional certification

10

need not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b)." *Waggoner*, 110 F. Supp. 3d at 770, n. 6 (conditionally certifying a collective action even though plaintiffs' "generalized statements about the job duties" of potential opt-in plaintiffs and conversations described "in the broadest of terms" were "quite thin"). Because the majority approach is most consistent with the logic underlying the FLSA's two-stage certification process, the Court will consider Plaintiffs' declarations in full.

Even if these declarations are worthy of consideration, Defendants insist that Plaintiffs cannot satisfy the "similarly situated" standard because their experiences differ too much from those of the opt-in plaintiffs. For example, Plaintiffs Craig Williams and John Williams signed Independent Contractor Agreements, while opt-in plaintiffs Kevin Berry and Mark Lafferty merely state that Defendants classified them as independent contractors.[8] [DE 33-3, 33-4, 33-5, 33-6]. Again, the Court declines to consider Defendants' argument because it is more

---

[8] Defendants also note that Craig and John Williams worked out of the Lexington warehouse, while Berry worked out of the Louisville warehouse and Lafferty operated out of a hospital in Corbin. [*Id.*]. Craig and John Williams worked between five and six days per week; Berry and lafferty consistently worked five days per week. [*Id.*]. Finally, Craig Williams shouldered additional supervisory responsibilities, while the others simply made deliveries. [*Id.*].

appropriate for the final certification stage.[9]  *See O'Brien*, 575 F.3d at 584 (stating that courts may consider "the factual and employment settings of the individual[] plaintiffs" at the final-certification stage); *Waggoner*, 110 F. Supp. 3d at 769-70 (finding that evidence of plaintiffs' varying job duties is best reserved for the second stage of the process).

Having considered the allegations set forth in the Second Amended Complaint, along with the declarations submitted by Plaintiffs and opt-in plaintiffs, the Court concludes that Plaintiffs have made the "modest factual showing" that their "position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47.  Plaintiffs have demonstrated that they performed similar duties, adhered to similar schedules, and followed similar rules as other delivery drivers working for Defendants.  Moreover, Plaintiffs have introduced evidence to suggest that Defendants misclassified all of their delivery drivers as independent contractors instead of employees, then used this misclassification as a basis to deny them overtime wages to which they were otherwise entitled.  *See*

---

[9] Defendants submitted their own declarations from current and former delivery drivers in an effort to demonstrate that Plaintiffs are not similarly situated to potential opt-in plaintiffs.  In *Waggoner*, the defendants used a similar tactic at the conditional certification stage, but the court declined to consider the evidence because it was "best left for consideration at the decertification stage."  *See* 110 F. Supp. 3d at 769-70; *see also Killion v. KeHE Distrib.*, 2012 WL 5385190, at *6 ("At the notice stage, this Court does not undertake a credibility determination to weigh the declarations in support of each side.").

*O'Brien*, 575 F.3d at 585 ("[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."). For these reasons, the Court will conditionally certify Plaintiffs' claim for unpaid overtime wages as a collective action under the FLSA.

### ii. The Composition of the Notice Group

The FLSA "grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible and not otherwise contrary to the statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 171 (1989) (discussing 29 U.S.C. § 216(b), the FLSA's enforcement provision, as incorporated into the ADEA). Thus, "district courts have discretion, in appropriate cases, to implement 29 U.S.C. 216(b) … by facilitating notice to potential plaintiffs." *Id.* "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.*

Plaintiffs move the Court to authorize notice to "[a]ll individuals who were classified as independent contractors while working as delivery drivers for King Bee Delivery, LLC and/or Bee Line Courier Service, Inc. from February 2, 2013 to present." [DE

13

32].  Plaintiffs also ask the Court to facilitate notice by ordering Defendants to produce a list of all delivery drivers who worked for them in the last three years, complete with last-known mailing addresses, last-known telephone numbers, last-known email addresses, work locations, and dates of employment.  [DE 33 at 14].

Defendants seek to limit the Notice Group to delivery drivers who worked in Kentucky, arguing that Plaintiffs have not produced any evidence of misclassification and unpaid overtime wages relating to drivers who worked in Ohio and Indiana.  Plaintiffs insist that they have presented such evidence, citing Kevin Berry's declaration that he had conversations with Ohio and Indiana drivers, who reported similar working conditions and compensation schemes.  [DE 33-4].  Plaintiffs also rely heavily on the Department of Labor's 2015 Report, which suggests that Defendants classified drivers at all locations as independent contractors and failed to pay them overtime wages when they worked more than forty hours per week.  Because this evidence supports the inference that the Defendants' labor practices affected drivers in all three states, the Court finds it appropriate to include Ohio and Indiana drivers in the Notice Group.

Defendants next ask the Court to limit its authorization of notice to delivery drivers who worked for them at some point in the three years prior to the date that notice is sent.  Plaintiffs

insist that all drivers who worked for Defendants from February 2, 2013, the date that they filed the Motion for Conditional Certification, to present should receive notice of the collective action.  In support of this proposition, Plaintiffs note that the Court tolled the FLSA's statute of limitations in this case.  While Plaintiffs are correct in stating that the Court tolled the statute of limitations in this case, their argument suggests that the tolling lasted throughout the pendency of their Motion for Conditional Certification.  It did not.

On February 11, 2016, nine days after Plaintiffs filed their Motion, the Court ordered that the statute of limitations be tolled during the extension of time granted to Defendants to respond to Plaintiffs' Motion for Conditional Certification.  [DE 40]. Defendants' response brief was ultimately due on October 17, 2016. [DE 50, 52, 56, 59].  Thus, the statute of limitations did not run from February 11, 2016, to October 17, 2016, or for 249 of the 400 days that this Motion has been pending.  The Court will account for this tolling by authorizing notice to all individuals who were classified as independent contractors while working as delivery drivers for Defendants in the three years and 249 days preceding the date that notice is sent.

Finally, Defendants complain that the Notice Group includes all delivery drivers who were classified as independent contractors, when it should be limited to drivers who worked as

independent contractors *and* worked more than forty hours per week without receiving overtime wages.  While both of these criteria are crucial to the ultimate success of Plaintiffs' overtime wages claim, the Court finds that defining the Notice Group in such a way could confuse potential opt-in plaintiffs and deter them from participating in this action.  It seems likely that potential opt-in plaintiffs will remember that they were classified as independent contractors while working as delivery drivers, but they may not recall how many hours they worked in a given week. Moreover, defining the Notice Group in broader terms best serves the remedial objectives of the FLSA.  If, after discovery, the parties find that an opt-in plaintiff was an independent contractor who did not work more than forty hours per week without receiving overtime wages, then he or she will simply be regarded as a member of the collective action with no damages.

### iii. The Method and Timing of Notice

In addition to facilitating notice, the FLSA allows courts to "monitor[] preparation and distribution of the notice" to the putative members of the collective action, thereby "ensur[ing] that it is timely, accurate, and informative." *Hoffman-LaRoche*, 493 U.S. at 171-72.  Plaintiffs have submitted a Proposed Notice and Opt-In Consent Form, to be sent via first class mail, which sets an opt-in period of ninety days.  They also ask the Court for

permission to send these documents to the Notice Group via email and to issue a reminder halfway through the notice period.

Defendants urge the Court to shorten the ninety-day period requested by Plaintiffs to thirty days, arguing that Plaintiffs have failed to explain why such a lengthy opt-in period is necessary. While this may be true, Defendants have likewise failed to explain why a thirty-day opt-in period is more appropriate. Because "[t]here is no hard and fast rule controlling the length of FLSA notice periods" across jurisdictions, and because the Eastern District of Kentucky has yet to adopt a standard notice period, the Court will follow the Western District of Kentucky's example and authorize a notice period of sixty days. *See Ganci v. MBF Inspection Servs., Inc.*, Case No. 2:15-cv-2929, 2016 WL 5104891, at *3 (S.D. Ohio Sept. 20, 2016) (expressing a preference for ninety-day opt-in periods, but noting that many courts limit opt-in periods to sixty days or less); *see Green v. Platinum Rest. Mid-America, LLC*, Civ. An. No. 3:14-cv-439-GNS, 2015 WL 6454856, at *5 (W.D. Ky. Oct. 26, 2015) ("The standard in FLSA cases in this jurisdiction is … sixty days.").

Defendants also ask the Court to deny Plaintiffs' request for dual notification, observing that "[c]ourts generally approve only a single method for notification unless there is a reason to believe that method is ineffective." *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012).

17

They argue that notice should be sent via first class mail only because it "is generally considered to be the best notice practicable." *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011). Defendants insist that email is less preferable because it invades the privacy of potential opt-in plaintiffs and presents the possibility that the Notice will be forwarded and distorted.

Nevertheless, a growing number of courts have authorized dual notification as to former employees only, recognizing that employers may not have current residential addresses for them. (observing that this approach "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate"); *Lewis v. Huntington Nat'l Bank*, No. C2-11-CV-0058, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) (limiting email notification to former employees because "[t]he likelihood that the addresses that [defendant] has on file for its current employees are accurate is high, and communicating by two methods serves no purpose").

In such situations, this approach "advances the remedial purpose of the FLSA because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their

18

opportunity to participate." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *4-5 (S.D. Ohio Feb. 26, 2015) (finding that these objectives "outweigh[] any privacy concerns associated with the disclosure of email addresses"). While the Court could authorize alternative forms of notice at a later date if necessary, efficiency favors limited dual notification at the outset. *Compare Lindberg*, 761 F. Supp. 2d at 765 (adopting the "wait-and-see" approach) *with Lutz v. Huntington Bancshares, Inc.*, No. 2:12-cv-01091, 2013 WL 1703361, at *7 (S.D. Ohio Apr. 19, 2013) ("By allowing e-mail notice to former employees now, the Court hopes to avoid the added step of having to resend notice in the event that a former employee's last known home address proves to be inaccurate.").

In an effort to efficiently effectuate the goals of the FLSA, the Court will authorize Plaintiffs to send the Notice and Opt-In Consent Form to former delivery drivers via first class mail and email. Dual notification is *not* appropriate for current drivers. Because Defendants have raised concerns about the integrity of notice transmitted via email, the Court orders Plaintiffs to attach the notice documents to the email as a PDF. *See, e.g., Lewis*, 2011 WL 8960489, at *2 (finding that such a step minimizes the risk that notice sent via email will be distorted or otherwise altered).

Finally, Defendants insist that reminder notices are inappropriate, observing that "[m]any courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit and encouraging participation." *Wolfram*, 2012 WL 6676778, at *4; *see also Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016) (concluding that issuance of a reminder notice "may unnecessarily stir up litigation or improperly suggest the Court's endorsement of [p]laintiff's claims"). *But see Kidd v. Mathis Tire and Auto Serv., Inc.*, 2014 WL 4923004, at *2-3 (W.D. Tenn. Sept. 18, 2014) (allowing the issuance of a reminder notice because such a step serves the remedial purpose of the FLSA). Because Plaintiffs have not explained why reminder notices are necessary in this case, and in the interest of eliminating the concerns of judicial endorsement detailed above, the Court declines to authorize the issuance of a reminder notice.

### iv. The Content of the Notice and Opt-In Consent Form

Defendants have also raised several concerns about the content of Plaintiffs' Proposed Notice and Opt-In Consent Form. Specifically, Defendants argue that these documents are deficient because they refer to pendent state law claims, bear the Court's name at the top of the page, and fail to sufficiently articulate the rights and responsibilities of potential opt-in plaintiffs.

20

The Court agrees that the Proposed Notice and Opt-In Consent Form should not discuss Plaintiffs' pending state law claims. These documents are only intended to notify potential opt-in plaintiffs of their opportunity to participate in a collective action to recover unpaid overtime wages under the FLSA. Because the Proposed Notice and Opt-In Consent Form do not offer potential opt-in plaintiffs a similar opportunity to participate collectively in the state law claims, any mention of them is confusing as well as irrelevant.

By contrast, Defendants' concerns about the use of the Court's name are overstated. Although courts have held that the inclusion of the court's name at the top of such documents could be interpreted "as a judicial endorsement of the claims" in the case, such concerns are not present when the name of the court is accompanied by the styling of the case, the case number, and a statement that the court takes no position on the merits of the action. *See Russell v. Ill. Bell Tele. Co.*, 575 F. Supp. 2d 930, 938-39 (N.D. Ill. 2008). Because Plaintiffs' Proposed Notice and Opt-In Consent Form contain all of these elements, the use of the Court's name could not be reasonably construed as a judicial endorsement of this action.

Defendants next argue that the Proposed Notice should inform potential opt-in plaintiffs that they may be responsible for Defendants' costs and attorney's fees if their claims are

unsuccessful. While Plaintiffs insist that such language will discourage potential opt-in plaintiffs from participating in the collective action, courts within the Sixth Circuit have held that such concerns do not justify the exclusion of this information. *Snide v. Discount Drug Mart, Inc.*, No. 1:11-cv-0244, 2011 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012) (reasoning that "potential plaintiffs, in order to make an informed decision about whether to opt-in, should be made aware that there is a possibility that they may be liable for a defendants' costs of litigation"); *Fenley*, 170 F. Supp. 3d at 1074-75 (observing that "[c]ourts across the country are split on this issue, but ultimately deciding to advise potential opt-in plaintiffs of the possibility that they will be liable for defendants' costs and fees). Thus, Plaintiffs must edit the Proposed Notice to include such information.

Defendants also insist that Plaintiffs notify potential opt-in plaintiffs of their right to retain counsel of their own choosing. Consistent with this language, Defendants argue that the Opt-In Consent Forms should not include language automatically designating Plaintiffs' counsel as attorneys for the potential opt-in plaintiffs. However, several courts within the Sixth Circuit have observed that "Plaintiffs' counsel is counsel of record; and, if any potential plaintiff chooses to opt-in, that plaintiff will be represented by Plaintiffs' counsel." *Fisher v. Mich. Bell Tele. Co.*, 665 F. Supp. 2d 819, 829 (E.D. Mich. 2009);

see also *Gomez v. ERMC Prop. Mgmt., LLC*, No. 3:13-cv-01081, 2014 WL 3053210, at *2 (N.D. Ohio July 7, 2014) (citing *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007) (concluding that the invitation to bring additional counsel into the lawsuit likely would defeat the efficient operation of the litigation). *But see Fenley*, 170 F. Supp. 3d at 1073 (quoting *Heaps v. Safelite Solutions, LLC*, No. 2:12-CV-159, 2012 WL 6593936, at *3 (S.D. Ohio Dec. 17, 2012)) ("Informing potential plaintiffs of their right to choose their own counsel is an appropriate element in a notice.").

To be clear, this case law "does not imply that any potential plaintiff is precluded from choosing not to opt-in or choosing instead to litigate a claim individually." *Fisher*, 665 F. Supp. 2d at 829; *see also Gomez*, 2014 WL 3053210, at *2 (observing that the notice documents informed potential opt-in plaintiffs that "they may choose to hire their own attorneys and pursue a lawsuit individually, unaffected by the course of this collective action"). Because the addition of attorneys in this case would likely diminish the efficiency of the collective action mechanism, and because Plaintiffs' Proposed Notice clearly states that potential opt-in plaintiffs may pursue relief individually, the Court sees no need to incorporate Defendants' suggested language therein.

Finally, Defendants request that the Notice include language advising potential opt-in plaintiffs of their right to consult with defense counsel. Several courts within the Sixth Circuit have indicated that such communication would be inappropriate. *Gomez*, 204 WL 3053210, at \*1; *Ganci*, 2016 WL 5104891, at \*5 (concluding that, "[a]t a minimum, including such information creates a risk of confusing putative plaintiffs" and "[a]t worst … opens the door to potentially inappropriate or unethical communications"). *But see Potts v. Nashville Limo & Transport, LLC*, No. 3:14-cv-1412, 2015 WL 4198793, at \*7 (M.D. Tenn. July 10, 2015) (stating, without explanation, that the notice should include contact information for defense counsel). Because the Court sees no need to facilitate such communication, it will not require Plaintiffs to include such language in the Notice.

B. *Motion to Dismiss*

A Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also* Fed. R. Civ. P. 12(b)(6). It should also include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the

24

misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In its Memorandum Opinion and Order, the Court dismissed Plaintiffs' claim for unlawful deductions under the KWHA as conclusory. [DE 43 at 11]. After all, Plaintiffs alleged that the deductions for the GPS tracker, uniforms, and fees constituted rebates or other unlawful deductions under KRS § 337.060(1), but "failed to provide any legal support or otherwise explain why the other deductions were forbidden under KRS § 337.060(1), particularly because Plaintiffs gave their written consent." [*Id.*]. As for the deductions relating to damaged property, the Court held that "Plaintiffs have provided no supporting facts whatsoever, and a recital of the elements of the statute will not do." [*Id.*].

Plaintiffs attempted to cure these defects by filing a Second Amended Complaint. They now assert that the deductions relating to the GPS tracker, uniforms, and fees qualify as "rebates" or "deductions" because these items "provided no value to Plaintiffs." [DE 58 at 11–12]. Plaintiffs do not describe the factual basis for this conclusion, nor do they explain why these deductions are forbidden when they agreed to them in writing. [DE 58 at 12]. Plaintiffs also fail to offer additional facts to support their claim for unlawful deductions relating to damaged

property.  In short, Plaintiffs offer nothing more than additional conclusory allegations to support their amended claim for unlawful deductions.  Dismissal of the claim is therefore appropriate.

### IV. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)  Plaintiffs' Motion to Certify Collective Action Status [DE 32] is hereby **GRANTED**;

(2)  Plaintiffs shall **REMOVE** all references to their pendent state law claims from their Proposed Notice;

(3)  Plaintiffs shall **INCLUDE** language in their Proposed Notice advising potential opt-in plaintiffs that they may be liable for costs and attorney's fees if their claim is unsuccessful;

(4)  The Notice Group shall **INCLUDE** all individuals who were classified as independent contractors while working as delivery drivers for King Bee Delivery, LLC and/or Bee Line Courier Service, Inc. from [a date three years and 249 days prior to the sending of the Notice] to present;

(5)  Defendants shall **PROVIDE** Plaintiffs' counsel with an electronic file containing the names, last-known mailing addresses, last-known telephone numbers, work locations, and dates of employment as to all current and former workers who are members of the Notice Group, as well as last-known email addresses for

former workers who are members of the Notice Group, **within ten
(10) days of the date of entry of this Order**;

(6) Plaintiffs' counsel shall **CAUSE** the Revised Notice and
Opt-In Consent Form to be sent to all members of the FLSA Notice
Group who have not already filed Opt-In Consent Forms on the docket
**within ten (10) business days of receiving the above-referenced
electronic file**;

(7) All members of the FLSA Notice Group shall be **provided
sixty (60) days from the date of mailing** the Notice and Opt-In
Consent Form to opt-in to this lawsuit;

(8) All Opt-In Consent Forms will be deemed to have been
filed with the Court the date that they are stamped as received,
and Plaintiffs' counsel will file them electronically on the docket
on a weekly basis, at a minimum;

(9) The parties shall **FILE** a Joint Status Report, detailing
their compliance with this Order and describing the progression of
the case, **within fourteen (14) days of the close of the opt-in
period**; and

(10) Defendants' Motion to Dismiss [DE 62] is **GRANTED.**

This the 14th day of March, 2017.



**Signed By:**

*__Joseph M. Hood__*

**Senior U.S. District Judge**