### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### Central Division at Lexington

|  |  |
|---|---|
| _____ ) | |
| CRAIG WILLIAMS, JOHN WILLIAMS, ) | |
| And FRED BERRY, on behalf of ) | |
| themselves and all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | Case No. 5:15-cv-00306-JMH |
| ) | |
| v. ) | |
| ) | |
| KING BEE DELIVERY, LLC AND ) | |
| BEE LINE COURIER SERVICE, INC., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE SETTLEMENT AND ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT

## I.  INTRODUCTION

Plaintiffs filed this lawsuit on behalf of themselves and similarly situated drivers who performed deliveries for Defendants King Bee Delivery, LLC and Bee Line Courier Service, Inc. in Kentucky, Ohio, and Indiana. Plaintiffs allege that Defendants misclassified them as independent contractors and violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Kentucky Payment of Wages Law ("KPWL"), K.R.S. 337.285 by failing to pay them overtime for hours worked in excess of 40 a week.[1]

After considerable negotiations and a full-day, in-person mediation session in Louisville, Kentucky with experienced mediator Michael Russell on August 28, 2018, the parties were able

---

[1]     Plaintiffs also alleged that Defendants violated the KPWL, KRS 337.060 by making deductions from the drivers' pay for items such as uniforms, GPS scanners, and administrative fees.  Plaintiffs' deductions claims, however, were dismissed.

to reach a collective, non-reversionary settlement of this matter for ████████.[2]  See Decl. of Harold Lichten ("Lichten Decl.") (attached as Ex. A) ¶¶ 5-6, 11. The terms of the Parties' settlement are set forth in the Parties' Settlement Agreement (attached as Ex. B).

Plaintiffs' Counsel believes that the negotiated Settlement Agreement provides a very fair settlement for the 59 individuals who opted-in to this case, including Plaintiffs ("FLSA Settlement Members") with respect to their claims for allegedly unpaid overtime wages, especially when taking into consideration the possibility that the litigation, if not settled now, might not result in any recovery for the FLSA Settlement Members. Indeed, the settlement provides reasonable compensation for each FLSA Settlement Member.  Fifty-nine FLSA Settlement Members will be receiving ████████. See Settlement Distribution List (attached as Ex. C). The average settlement share is expected to be approximately █████.[3] Id. Moreover, since this is a non-reversionary settlement, no portion of the settlement funds will revert to the Defendants.

Plaintiffs respectfully submit that this Motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

Accordingly, Plaintiffs request that the Court issue an order: 1) granting approval of the proposed Settlement Agreement; 2) approving attorneys' fees and costs in the amount of one-third

---

[2]     The only other claim that remains is the individual retaliation claim filed by Craig Williams.  The parties anticipate that such claim will be dismissed through a Rule 41 stipulation of dismissal with prejudice, for which Court approval is not required. See Dorner v. Polsinelli, White, Vardeman & Shalton, P.C., 856 F. Supp. 1483, 1489 (D. Kan. 1994) ("Congress' omission of any reference to retaliatory discharge claims in the supervision statute, while specifically referring to other statutory claims, clearly implies that Congress did not intend for the supervision statute to apply to retaliation claims.").

[3]     Pursuant to the parties' agreement, the proceeds from uncashed checks will go to the *cy pres* beneficiary, Kentucky Equal Justice Center, which, among other things, represents low-wage workers throughout the country. Settlement Agreement ¶ 12.

2

(1/3) of the Total Settlement Amount; 3) approving the distribution of service awards to the Plaintiffs as described below; and 4) approving the plan of notice to the opt-ins, including approving the proposed Notice (attached as Exhibit B to the Parties' Settlement Agreement). Defendants do not oppose this Motion.

## II.   <u>PROCEDURAL HISTORY</u>

On October 14, 2015, Plaintiffs Craig Williams, John Williams, and Fred Berry filed this class and collective action, which alleges that Defendants misclassified their delivery drivers as independent contractors and, as a result, failed to pay their drivers any overtime compensation and made unlawful deductions from their pay. ECF No. 1.  On November 19, 2015, Defendants filed a motion to dismiss all of Plaintiffs' wage claims. ECF No. 12.  On December 10, 2015, Plaintiffs filed an Amended Complaint.  ECF No. 23.

On January 11, 2016, Defendants filed another motion to dismiss all of Plaintiffs' claims. ECF No. 29.  Plaintiffs' filed their opposition on February 1, 2016.  ECF No. 30.

On February 2, 2016, Plaintiffs filed a motion for conditional certification and permission to distribute notice to putative class members under the FLSA, § 216(b). ECF No. 32.  Before Defendants responded, on February 9, 2016, the Court granted Defendants' motion to delay briefing on Plaintiffs' motion until after a ruling on Defendants' motion to dismiss.[4]  ECF No. 38.

On August 8, 2016, the Court granted Defendants' motion to dismiss in part and denied it in part.  ECF No. 43.  The Court held that Plaintiffs had alleged facts that would support claims they were misclassified as independent contractors and were employees of King Bee or Bee Line. Id. at p. 5-6.  In addition, the Court held that Plaintiffs had alleged sufficient facts to support a

---

[4]    On February 11, 2016, the Court granted Plaintiffs' motion to toll the FLSA statute of limitations while the Court considered Defendants' motion to dismiss.  ECF No. 40.

claim that King Bee and Bee Line could be held liable as joint employers.  Id. at p. 6-8.
Furthermore, the Court held that Plaintiffs had sufficiently alleged claims that they worked more
than 40 hours a week without receiving overtime pay.  Id. at p. 8-10.

Meanwhile, the Court dismissed Plaintiffs' claim for unlawful deductions without
prejudice.  Id. at p. 10-11.  Moreover, the Court dismissed Plaintiffs' Rule 23 class claims seeking
overtime under the KPWL, holding that, even though the Kentucky Supreme Court had yet to rule
on the issue, the KPWL prohibited representative actions.  Id. at p. 14.

On August 23, 2016, Plaintiffs filed a motion for leave to file an amended complaint to
allege additional facts in support of their claim for unlawful deductions under the KPWL.  ECF
No. 46.  Defendants opposed and Plaintiffs filed a reply in support of their motion.  ECF Nos. 51,
53.  On October 13, 2016, the Court granted Plaintiffs' motion to amend the complaint (ECF No.
57).  Plaintiffs file the Second Amended Complaint on the same day.  ECF No. 58.

Due to the Court's ruling in denying, in part, the motion to dismiss, Defendants filed their
opposition to Plaintiffs' motion for conditional certification on October 17, 2016.  ECF No. 59.
Plaintiffs filed their reply in support of conditional certification on November 7, 2016.  ECF No.
63.

On November 3, 2016, Defendants again filed a motion to dismiss Plaintiffs' claim for
unlawful deductions.  ECF No. 62.  That motion was fully briefed.  ECF Nos. 66, 69.

On March 14, 2017, the Court granted Plaintiffs' motion for conditional certification and
authorized the issuance of notice to "[a]ll individuals who were classified as independent
contractors while working as delivery drivers for King Bee Delivery, LLC and/or Bee Line Courier

Service, Inc. from [a date three years and 249 days prior to the sending of the Notice] to present." [5] ECF No. 70 at p. 13-14, 26. The Court authorized a 60-day opt-in period.

On March 30, 2017, Plaintiffs sent out notice by regular mail to 435 current and former delivery drivers identified by Defendants as potential class members, including notice by e-mail to 26 former delivery drivers, informing them of the case and giving them until May 30, 2017 to opt-in to the case. Decl. of Ebony Green at ¶ 3 (attached as Ex. F). On April 24, 2017, because only 26 e-mail addresses were provided, Plaintiffs filed a motion for corrective relief and asking the Court for authorization to call former delivery drivers who did not respond to the opt-in notice by April 30, 2017. ECF No. 79. The Court granted Plaintiffs' motion in part, ordering that Plaintiffs could contact former delivery drivers whose notices were returned in the mail as "undeliverable" by telephone for the sole purpose of determining their correct mailing or e-mail address and using a script agreed to by the parties. ECF No. 80.

On May 3 and May 17, 2017, Plaintiffs' counsel called all 37 former drivers whose notice and opt-in forms were returned as "undeliverable" and were able to mail out opt-in forms to 28 of those class members. ECF No. 90 at ¶ 3; Green Decl. at ¶ 5. As of May 30, 2017, 51 individuals opted-in to the case. ECF No. 90 at ¶ 4. Plaintiffs received an additional three opt-ins just after the close of the opt-in period and Defendants agreed to the late filing of these three opt-ins. ECF No. 92.

On June 19, 2017, Defendants informed Plaintiffs that Defendants had inadvertently excluded 95 individuals from the class list, Defendants agreed to promptly produce contact information for those 95 drivers and the parties agreed to a 45-day opt-in period for those

---

[5] In the same ruling, the Court dismissed Plaintiffs' claims for unlawful deductions. ECF No. 70 at p. 24-25.

individuals. ECF No. 90 at ¶ 6-7. On July 5, 2017, Plaintiffs' counsel mailed out 95 notices and opt-in forms to the addresses provided by Defendants. Green Decl. at ¶ 6. Of those, Plaintiffs filed an additional two opt-in forms.

On September 1, 2017, Plaintiffs filed a motion for reconsideration of this Court's ruling that Plaintiffs could not obtain a Rule 23 opt-out class for all of Defendants' drives for their KPWL claim for overtime pay. ECF No. 95. In support, Plaintiffs pointed out that in McCann v. The Sullivan University System Inc., No. 2015-SC-000144-DG, 2017 WL 3631704, at *4 (Ky. Aug. 24, 2017), the Kentucky Supreme Court had recently held that class actions were available under the KPWL. That motion was fully briefed. ECF Nos. 101-02.

On September 22, 2017, Plaintiffs filed a motion for protective order to limit the scope of Defendants' discovery requests. ECF No. 100. Defendants had services interrogatories and requests for production of documents on all 59 opt-ins. Plaintiffs sought to limit their responses to the three named plaintiffs and a representative sample of the opt-ins.

With the Plaintiffs' motion for protective order and motion for reconsideration pending, on February 28, 2018, the parties jointly filed a motion to stay to allow the parties to pursue mediation. ECF No. 107. On March 5, 2018, the Court granted the motion and stayed the case. ECF No. 108.

On August 28, 2018, the Parties participated in a full-day, in-person mediation session in Louisville, Kentucky before experienced mediator Michael Russell. Prior to mediation, Defendants produced hundreds of pages of delivery logs showing the hours that opt-ins spent making deliveries during the relevant time period. In addition, counsel for Plaintiffs interview approximately 59 opt-in Plaintiffs about how many hours they worked for Defendants each week. Plaintiffs then provided Defendants with a comprehensive damages analysis based on their discussions with the drivers and review of Defendants' records. After an entire day of negotiations,

the Parties reached a settlement as discussed herein.

The Parties now present the Settlement Agreement to the Court for its approval. The Parties have spent considerable time negotiating and drafting the Settlement Agreement, which ensures that all members of the Collective are provided with notice of the Settlement Agreement and its terms. Furthermore, Plaintiffs' Counsel will spend significant resources tracking down FLSA Settlement Members and sending out checks at no additional cost to the FLSA Settlement Members.

III.    **THE TERMS OF THE SETTLEMENT AGREEMENT**

Pursuant to the Settlement Agreement, the FLSA Settlement Members include all individuals who performed deliveries for King Bee Delivery, LLC and Bee Line Courier Service and who have opted in to the above-captioned lawsuit (the "FLSA Settlement Members").  The Parties have agreed that, for settlement purposes only, the Collective may be certified pursuant to the FLSA. There are approximately 59 FLSA Settlement Members.  Each FLSA Settlement Member will be fully advised of this Settlement with the Notice of Settlement, which is attached to the Settlement Agreement as Exhibit B.

A.    **Monetary Terms**

The Total Settlement Amount ▮▮▮▮▮ and will be distributed to the 59 FLSA Settlement Members on a non-reversionary basis. The settlement will provide reasonable compensation to the FLSA Settlement Members for the wrongs alleged in the Complaint, particularly given the litigation risks if the case were to move forward.

The Settlement Agreement provides that, if approved by the Court, the Total Settlement Amount of ▮▮▮▮▮ will be distributed as follows:

1.    Incentive payments of ▮▮▮▮▮ to Plaintiff Craig Williams and ▮▮▮▮▮ each to

7

Plaintiffs John Williams, Fred Berry and Opt-in Plaintiff Kevin Berry, who initiated this action to benefit the entire collective of technicians who worked for Defendants, and who actively participated in this action, for a total of ███████ .

2.      An award of attorneys' fees of one-third of the gross settlement amount (███████), to Plaintiffs' Counsel, which will cover both their fees and expenses in litigating this lawsuit, as well as the costs associated with administering the settlement in-house.

3.      The remaining amount, the Net Settlement Amount, will total ███████ to be distributed among all 59 FLSA Settlement Members, based on a formula that takes into account the number of weeks they worked for Defendants and amount of certain deductions taken from their pay. The formula is described below.

**B.      Notice of The Settlement to FLSA Settlement Members, Calculation and Distribution of the Gross Settlement Amount.**

Pursuant to the Settlement Agreement, Defendants will deposit a check for the Total Settlement Amount of ███████ with Plaintiffs' Counsel within 30 days from the dismissal of this lawsuit and the conclusion of any appeal, whichever is later.  No later than 14 days after Defendants have deposited the Total Settlement Amount, Plaintiffs' Counsel will mail the Court-Approved Notice of Settlement and Settlement Awards to FLSA Settlement Members via First Class Mail.  See Proposed Notice (attached as Exhibit B to the Settlement Agreement).  The Notice will inform FLSA Settlement Members of the settlement, how shares were calculated, the amount of their checks, and that, by depositing the check, FLSA Settlement Members will release all of their claims against Defendants related to the state and federal law claims which were raised or which could have been raised in the Complaint.

FLSA Settlement Members need not submit a Claim Form as they already opted in to the lawsuit prior to August 19, 2017 . Awards to FLSA Settlement Members will be made from the

Net Settlement Amount.

Each FLSA Settlement Member shall receive a settlement award calculated using the following formula, as set forth in the Settlement Agreement.

a.  The amount of ▆▆▆ per settlement claimant will be deducted from the Net Settlement Amount prior to the determination of *pro rata* individual settlement shares and allocated to each opt-in so that each he or she receives at least ▆▆▆ in exchange for their release of their claims.

b.  Plaintiffs' Counsel will calculate an award for each FLSA Settlement Member from the Net Settlement Amount based on the total potential damages (deductions plus overtime) for the respective FLSA Settlement Member when he/she worked for Defendants during the collective period, and Defendants will have an opportunity to review and object to any such allocation.

c.  Each FLSA Settlement Member's total potential damages will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share percentage figure. The respective FLSA Settlement Member's total potential damages will be multiplied by the share percentage figure and added to the ▆▆▆ allocation noted above to determine each FLSA Settlement Member's settlement award.

Each FLSA Settlement Member's settlement share will be treated as non-wage income and/or damages or liquidated damages, which will be reported on an IRS Form 1099, and will not be subject to withholding taxes. Settlement Agreement ¶ 6.

The Settlement is non-reversionary. Settlement Agreement ¶ 12. Settlement Award checks shall be valid for one-hundred eighty (180) days from the date they are issued. Id.  The Settlement Award Checks will be accompanied by the Notice stating the checks are valid for 180 days. Settlement Agreement Ex. A. Plaintiffs' Counsel will attempt to contact FLSA Settlement Members whose checks are returned as undeliverable or who have not cashed their checks to obtain updated addresses.  Lichten Decl. ¶ 16.

At the conclusion of the 180-day check void period, Plaintiffs' Counsel will pay the amount of uncashed checks to the *cy pres* beneficiary, Kentucky Equal Justice Center, which is an organization that represents low-wage workers with wage claims in Kentucky. Settlement

Agreement ¶ 12.

### C.   Release of Claims

FLSA Settlement Members who are sent settlement checks shall release:

All claims that were or could have been asserted that are related to the claims brought in the Lawsuit against King Bee Delivery, LLC or Bee Line Courier Services, Inc. have been waived, released, and discharged.  This means that I cannot sue King Bee Delivery, LLC, Bee Line Courier Services, Inc., or their owners, employees, or affiliates for any claims that were or could have been asserted in such Lawsuit, including those pertaining to the payment of wages, independent contractor misclassification claims, wage claims, and claims for deductions, that accrued at any time through [the date of the settlement agreement]. The terms of the settlement require that I keep the terms of the settlement and the settlement amount confidential.  I may be sued for breaching this confidentiality requirement. Please see Notice of Collective Action Settlement and Settlement Award Check dated [DATE] for further information.

Settlement Agreement ¶ 13.[6]

### D.   Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, Plaintiffs' Counsel's attorneys' fees shall not exceed one-third (1/3) of the Gross Settlement Amount (████), which will compensate Plaintiffs' Counsel for all work performed in this lawsuit and for all of the work remaining to be performed, including, but not limited to, documenting the Settlement, securing Court approval of the Settlement, ensuring that the Settlement is fairly administered and implemented, and obtaining final dismissal of the lawsuit.  Plaintiffs' Counsel shall receive reimbursement of their out-of-pocket costs included in their attorneys' fees, which are included in the one-third fee. Id.

## IV.   ARGUMENT

Plaintiffs respectfully request that the Court enter the accompanying proposed order

---

[6]      Due to the small number of opt-ins in this case, almost all of whom Class Counsel have spoken to during the litigation of this case, Class Counsel has agreed to have the claims released because they are already on notice that this case is pending and are likely to cash their checks given their participation in this case.

approving the Settlement. Defendants do not oppose this Motion.

A.    **Applicable Legal Standard**

1.    **Legal Standard for Approval of FLSA Settlements**

In general, "FLSA settlements require approval by either the Department of Labor or a court."[7] Steele v. Staffmark Investments, LLC, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016). "If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues,' such as FLSA coverage or computation of back wages that are 'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation." Snook v. Valley Ob-Gyn Clinic, P.C., 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015) (citing Gentrup v. Renovo Services, LLC, 2011 WL 2532922, at *2 (S.D.Ohio Jun.24, 2011). See also Harris v. Chipotle Mexican Grill, Inc., 2018 WL 617972, at *4 (D. Minn. Jan. 29, 2018) (a court may approve an FLSA settlement if "it represents a fair compromise of a bona fide wage and hour dispute"). "The Sixth Circuit has identified seven factors that aid courts in determining whether a class-action settlement is fair: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." Ross v. Jack Rabbit Servs., LLC, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016) (citing Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007)). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." Id

---

[7]    The Fifth Circuit, however, held that there is no need for court-approval of a privately-entered FLSA settlement. Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 256 (5th Cir.2012).

11

*(citations omitted).*  "In reaching a determination, courts "should be mindful of the strong presumption in favor of finding a settlement fair." King v. Raineri Const., LLC, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) (citing Crabtree v. Volkert, Inc., 2013 WL 593500, at *3 (S.D.Ala. Feb. 14, 2013) (noting that "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement")).

"These factors apply to settlement agreements made in FLSA actions, and must be considered along with the federal policy favoring settlement of class actions.  Id. (citing Int'l Union, 497 F.3d at 632).

"The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement," since "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date."  Diaz v. Scores Holding Co., Inc., 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). In most cases, courts do not hold hearings on such settlements, but simply review the paperwork, and, if in order, approve the settlement. See, e.g., Aros v. United Rentals, Inc., 2012 WL 3060470, at *2 (D. Conn. July 26, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "[t]he FLSA settlement in this case meets the standard for approval" because "[t]he settlement was a result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time."); Diaz, 2011 WL 6399468 at *2 (S.D.N.Y. July 11, 2011) (approving settlement of opt-in plaintiffs' FLSA claims because "[t]he settlement was the result of contested litigation and arm's length negotiation.").  Moreover, courts have routinely approved settlement of FLSA overtime claims solely for the individuals who had filed timely opt-in forms.  See, e.g.,

Burton v. Utility Design, Inc., 2008 WL 2856983, at *2 (M.D. Fl. July 22, 2008) (adopting and confirming magistrate judge's findings and recommendation to approve the proposed settlement of individual FLSA claims for opt-in plaintiffs only); Beasley v. Custom Commc's, Inc., No. 15-00583 (Oct. 24, 2017 E.D.N.C.) (ECF No. 116) (approving settlement on behalf of cable installers who had opted-in to FLSA overtime and state law deductions case without a hearing).[8]

**B.    The Terms of the Proposed Settlement Are a Fair and Reasonable Resolution of a Bona Fide Dispute**

"A district court may only approve an FLSA settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." King v. Raineri Const., LLC, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015) (citing Fry v. Accent Mktg. Servs., L.L.C., No. 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014); Lynn's Food Stores, Inc. v. U.S., 679 F.2d 1350, 1353 (11th Cir.1982)); Stainbrook v. Minnesota Dept. of Pub. Safety, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017) (same); Valencia v. Greater Omaha Packing, 8:08CV161, 2014 WL 284461, at *2 (D. Neb. Jan. 23, 2014) ("Courts should review FLSA collective action settlements to ensure 'a fair and reasonable resolution of a bona fide dispute.'").

"A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under FLSA." King, 2015 WL 631253, at *2 (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 115 (1946); Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945)). Thus, for example, a settlement "is the product of contested litigation where the parties dispute the amount of overtime

---

[8] Because Plaintiffs' class claims were previously dismissed by the Court without any Rule 23 class having been certified, Rule 23 does not apply, and the Court may grant approval to the settlement via a one-step process, rather than holding a final fairness hearing. FLSA opt-in class members agreed to be bound by any judgment or settlement reached in this matter on their opt-in forms, thus there are no absentee class members who will be affected by this settlement.

hours Plaintiff actually worked and whether defendants refused to pay for mandatory work hours." Boland v. Baue Funeral Home Co., 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015). That is precisely the case here since Defendants did not keep time records for their drivers and, indeed, Defendants claim that their drivers did not work any overtime at all.

> **1.     This Matter Has Been Extensively Litigated for Three Years, Demonstrating that there was no Fraud or Collusion Between the Parties**

"In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." Jack Rabbit Servs., LLC, 2016 WL 7320890, at *3 (quoting Crawford v. Lexington-Fayette Urban Cty. Gov't, 2008 WL 4724499, *2 (E.D. Ky. Oct. 23, 2008)). As demonstrated above, this matter has been extensively litigated since Plaintiffs file the complaint on October 14, 2015. The parties engaged in substantial motion practice and exchanged comprehensive data regarding the amount of hours worked by the opt-ins on an informal basis prior to mediation. Moreover, the parties engaged a well-respected employment law mediator and met for a full-day mediation in Louisville, Kentucky. Moreover, the terms of the settlement agreement, which itself was the product of extensive negotiations, supports a finding that the settlement was not the result of fraud or collusion.

> **2.     The Complexity, Expense, and Likely Duration of the Litigation Weigh Heavily in Favor of Settlement.**

When, in comparison to the proposed Settlement, proceeding with litigation would require a substantial amount of time to yield a benefit to the FLSA Settlement Members, it is an indication that the proposed settlement is fair, reasonable, and adequate. See Edelen v. Am. Residential Servs. Inc., 2013 WL 3816986, at *9 (D. Md. July 22, 2013) ("[t]he existence of [ ] disputed legal and factual issues creates uncertainty and risk for all parties moving forward"); see also Pliego v. Los Arcos Mexican Rests., Inc., 313 F.R.D. 117, 130-131 (D. Colo. 2016) ("[G]iven the inherent risks associated with further litigation, the Class Members may recover less should the case proceed

through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

Furthermore, if litigation were to continue, Defendants would likely move to decertify the collective. This Court has already conditionally certified a collective of delivery drivers who worked for King Bee and Bee Line. ECF No. 70. The courts in the Sixth Circuit, however, utilize a two-step approach to collective action certification under the FLSA. See Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).  Courts have reached different conclusions when faced with motions to decertify collectives of workers who allege that they were misclassified as independent contractors and were denied overtime pay. Compare Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 773 (7th Cir. 2013) (decertifying class of cable installers finding that damages calculations would have required individual trials) with Monroe v. FTS USA, LLC, 860 F.3d 389, 406 (6th Cir. 2017) (denying motion to decertify and refusing to follow Espenscheid).

Furthermore, there is a bona fide dispute regarding the threshold question of whether the plaintiffs are employees or independent contractors.  Defendants claim their drivers are independent contractors.  Courts have reached conflicting results, however, when making the determination of whether similar types of workers are employees or independent contractors under the FLSA.  In re FedEx Ground Package Sys., Inc., Emp't Practices Litig., 758 F.Supp.2d 638, 684–85.  See also Lang v. DirecTV, Inc., 801 F. Supp. 2d 532, 536 (E.D. La. 2011) (collecting cases finding cable installers both employees and independent contractors); Roeder v. Directv, Inc., 2017 WL 151401, at *10 (N.D. Iowa Jan. 13, 2017) (same). Moreover, because the determination of whether a delivery driver is an employee requires a "fact-intensive" inquiry, prior caselaw may not be dispositive on the employee-independent contractor question.  Roeder, 2017 WL 151401, at *10

In addition, because Defendants classified their delivery drivers as independent contractors, they did not maintain complete records of the delivery drivers' work hours.  Moreover,

Defendants claim that none of their drivers worked any overtime.  Without time records, this matter is the quintessential bona fide dispute and it supports the reasonableness of the settlement.  Boland, 2015 WL 7300507, at *2.  Thus, there would likely be a dispute over the amount of the drivers' overtime damages.

Defendants also asserted that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that the violation was a "knowing violation," such that Plaintiffs would only be able to recover under a two-year FLSA statute of limitations.  See 29 U.S.C. § 255(a); McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Ultimately, the Settlement that the Parties reached reflects what Plaintiffs' Counsel believes to be a fair and reasonable compromise of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded in litigation.

### 3. The Amount of Discovery Made Available in this Case Weighs in Favor of Settlement.

The parties exchanged written discovery requests and both sides produced hundreds of pages of documents on a confidential basis in preparation for mediation.  In addition, because all of the drivers in this case filed opt-in forms, Class Counsel was able to interview each of the 59 named and opt-in Plaintiffs in person or over the phone at length and were able to gather information about the conditions of each drivers' work for Defendants as well as the amount of time they spent working for Defendants each week.  As a result, Class Counsel were able to calculate the overtime damages potentially available to each of the named and opt-in Plaintiffs.

Furthermore, in response to Class Counsel's inquiries, Defendants produced delivery manifests and other data showing the number of deliveries and the amount of time between deliveries for approximately 20 of the 59 opt-ins.  Using all of this informal discovery, Class Counsel were able to reasonably estimate the scope of Plaintiffs' potential overtime damages in

16

this case.  Thus, discovery was more than adequate to inform a reasonable settlement here.  See Ross, 2016 WL 7320890, at *3 ("substantial discovery conducted prior to settlement weighs in favor of finding the settlement fair and reasonable")

### 4.    The Plaintiffs' Likelihood of Success on the Merits Weighs in Favor of Settlement.

The Court must "weigh[ ] the plaintiff[s'] likelihood of success on the merits against the amount and form of the relief offered in the settlement."  Id. (quoting In re Sketchers Toning Shoe Prods. Liab. Litig., 2013 WL 2010702, at *6).  While both sides believe they would ultimately be successful in this case, Plaintiffs would be required to show that they were employees under the FLSA to be successful.  To do so, Plaintiffs "must prove the six-factor economic realities test, which has had varying results in disputes over employment status."  Id. (comparing Chao v. First Nat'l Lending Corp., 516 F. Supp. 2d 895, 900 (N.D. Ohio 2006) (holding loan officers were employees, not independent contractors, after applying the economic realities test) with Donovan, 736 F.2d at 1120 (affirming lower court's conclusion that farm workers were independent contractors, not employees, after applying the economic realities test)).  As another Kentucky federal court recognized, the fact that delivery drivers classified as independent contractors must succeed in convincing the court that they were in reality employees is a significant enough risk to weigh in favor of settlement.  Ross, 2016 WL 7320890, at *4 ("If Plaintiffs are not successful in arguing that they were employees, rather than independent contractors, they will recover nothing.").  The same applies here.

### 5.    The Remaining Factors Weigh in Favor of Settlement Approval

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."  Ross, 2016 WL 7320890, at *4 (citing In re Sketchers Toning Shoe Prods. Liab. Litig., 2013 WL 2010702, at *6).  Plaintiffs' Counsel are experienced

17

and respected class action litigators. <u>See</u> Lichten Decl. ¶¶ 2-4; Decl. of Trent Taylor ("Taylor Decl.") at ¶ 4 (attached as Ex. D). Based on Plaintiffs' Counsel's knowledge and expertise in this area of law, Plaintiffs' Counsel believe this Settlement will provide a substantial benefit to the FLSA Settlement Members. Moreover, Class Counsel have interviewed nearly all of the opt-in plaintiffs and are well aware of the facts regarding their work for Defendants. In addition, Defendants have produced hundreds of documents in informal discovery. Therefore, Class Counsel is sufficiently informed as to the facts of this case and are knowingly seeking settlement approval here.

Furthermore, the reaction of the class supports the reasonableness of the settlement. There is no opt-out mechanism in FLSA actions as there are with class actions under Rule 23. <u>Crawford</u>, 2008 WL 4724499 at *8. Moreover, each opt-in authorized Class Counsel to settle this case on their behalf. Thus, this factor weighs in favor of finding the settlement fair and reasonable. <u>Ross</u>, 2016 WL 7320890, at *4.

The public interest also weighs in favor of settlement approval. "'There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" <u>Ross</u>, 2016 WL 7320890, at *4 (quoting <u>In re Sketchers Toning Shoe Prods. Liab. Litig.</u>, 2013 WL 2010702, at *7). Indeed, the settlement furthers the purposes of the FLSA by providing FLSA Settlement Members with substantial recovery for their unpaid overtime, that, because of the lack of bargaining power inherent in employer-employee relationships, they may have otherwise been unable to recover. <u>See</u> 29 U.S.C. § 202 (congressional finding and declaration of policy); <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain

segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Importantly, all FLSA Settlement Members will receive a Settlement Award. Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### 6.    The Allocation Formula is Fair and Reasonable

Furthermore. the proposed allocation formula is fair and reasonable and should be approved. See In re Dell, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010) ("The allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel.") (quoting In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001) (citations omitted)); see also Chaverria v. New York Airport Serv., LLC, 875 F. Supp. 2d. 164 (E.D.N.Y. 2012) ("As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.") (citations omitted). Under the proposed allocation formula, FLSA Settlement Members will receive settlement shares based on a formula that takes into account the number of weeks they worked for Defendants and amount of overtime they would have claimed at trial. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." In re Oracle Sec. Litig., 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994); Slipchenko v. Brunel Energy, Inc., 2015 WL 338358, at *12 (S.D. Tex. Jan. 23, 2015); Schwartz v. TXU Corp., 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005). This formula is similar to those found to be fair and reasonable in similar cases, and warrants approval. See, e.g., DeWitt v Darlington Cty., S.C., 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013) (approving a *pro rata*

19

allocation of the settlement based on the number of shifts worked); Kidrick v. ABC Television & Appliance Rental, Inc., 1999 WL 1027050, at * 3 (N.D.W.V. May 12, 1999) (approving distribution of the settlement fund based on the number of workweeks each class member worked).

### C.   The Service Awards are Justified and Should Be Approved

Pursuant to the Settlement Agreement, Defendants have agreed to pay service awards of ████████ to Plaintiff Craig Williams, and awards of █████ each to Plaintiffs John Williams, Fred Berry and Kevin Berry. Subject to Court approval, these amounts will be paid to Plaintiffs in addition to their recovery of unpaid overtime and deductions for the time when they worked for Broadband.  Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Ross, 2016 WL 7320890, at *5 (quoting Dillworth v. Case Farms Processing, Inc., 2010 WL 776933, at *7 (N.D. Ohio, Mar. 8, 2010)).

Indeed, courts have routinely approved incentive awards in wage and hour cases much greater than the awards requested by Plaintiffs in this case. See, e.g., Dillworth, 2010 WL 776933, *7 (approving incentive payments of $6,000 and $4,000 in an FLSA case); E.E.O.C. v. Wal-Mart Stores, Inc., 2011 WL 6400160, *3 (E.D. Ky. Dec. 20, 2011) (approving incentive payments ranging from $13,500 to $3,500 totaling $270,000 of a $11,700,000 settlement); Harris v. Chipotle Mexican Grill, Inc., 2018 WL 617972, at *3 (D. Minn. Jan. 29, 2018) (approving incentive payments of $15,000 two of the named plaintiffs, $7,500 for another plaintiff, and $5,000 for a fourth plaintiff); McClean v. Health Sys., Inc., 2015 WL 12513703, at *4 (W.D. Mo. Aug. 4, 2015) (approving $5,000 incentive award to each of two named plaintiffs and a $500 service award to each of eight deponents).

Here, the proposed additional payments to Plaintiffs are justified by the benefits that

Plaintiffs have brought to the FLSA Settlement Members. Plaintiffs took significant risks in coming forward to represent the interests of their fellow employees, including risking their reputation in the community and in their field of employment, in order to participate in this case on behalf of the collective action members. See Sand v. Greenberg, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); Craig v. Rite Aid Corp., 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

Furthermore, Plaintiffs worked with Plaintiffs' Counsel, providing background information about their employment, about Defendants' policies and practices, and about the allegations in this lawsuit. Lichten Decl. ¶¶ 20-21. Further, Plaintiffs actively supported the litigation of their claims on behalf of the collective and worked with Plaintiffs' Counsel to produce declarations in support of conditional certification. See ECF Nos. 63-4, 63-5. Moreover, Plaintiffs worked with counsel to prepare for the mediation, and some of the Plaintiffs traveled to Des Moines and both Craig Williams and Kevin Berry attended the full-day mediation. Lichten Decl. ¶ 21. For these reasons, the service award payments of ███████ to Plaintiff Craig Williams, and awards of █████ each to Plaintiffs Fred Berry, John Williams, and Kevin Berry should be approved as fair and reasonable.

### D.    The Request for Attorneys' Fees and Costs Should be Approved

"When awarding attorney's fees in a class action, a court must make sure that counsel is

fairly compensated for the amount of work done as well as for the results achieved."[9] <u>Dick v. Sprint Commc'ns Co. L.P.</u>, 297 F.R.D. 283, 298 (W.D. Ky. 2014). Courts in the Sixth Circuit often use both a percentage of the fund and lodestar method as cross checks of the requested fee's reasonableness. <u>Id</u>. at 299 (citing <u>In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.</u>, 268 F.Supp.2d 907, 923 (N.D.Ohio 2003)). However, "a lodestar analysis is unnecessary if the fee does not appear to be excessive as a percentage of the recovery." <u>Id</u>. at 300. Regardless of the method used by the Court, as demonstrated below, the requested fee here is reasonable.

In addition, courts in the Sixth Circuit consider the following factors (referred to collectively as the <u>Ramey </u>factors) when weighing the reasonableness of a requested attorney's fee: "'(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'" <u>Whitlock</u>, 2015 WL 9413142, at *8 (quoting <u>Moulton v. United States Steel Corp.</u>, 581 F.3d 344, 352 (6th Cir. 2009). <u>See</u> <u>also</u> <u>Ramey v. Cincinnati Enquirer, Inc.</u>, 508 F.2d 1188 (6th Cir. 1974). These factors support approval of the requested fee and are discussed below.

      **1.**    **Application of the <u>Ramey</u> Factors Supports the Request One-Third Attorney's Fees.**

The first factor looks at the value of the benefit rendered to the class. <u>Whitlock</u>, 2015 WL 9413142, at *8. Here, given The amount of the benefit to the class is substantial. Despite Defendants claim that their delivery drivers were properly classified as independent contractors

---

[9]     In fact, a plaintiff in a FLSA case may recover his/her attorneys' fees and expenses under the statute's fee-shifting provision. <u>See</u> 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or Plaintiff, allow a reasonable attorney fee to be paid by the defendant, and costs of the action.").

and, even if they were employees, did not work overtime.  Because Defendants had potentially strong legal and factual defenses to Plaintiffs' claims, even if Plaintiffs were able to maintain collective action certification in the action, an outcome of zero recovery for the Plaintiffs and for the FLSA Settlement Members remained possible.

Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. Indeed, "even a victory at trial is not a guarantee of ultimate success" given that Defendants would likely appeal any judgment in Plaintiffs' favor.  In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 747-48, aff'd, 798 F.2d 35 (2d Cir. 1986).  Despite this, the recovery obtained for the class is substantial.  Indeed, the settlement awards the Plaintiffs in this case an average of ██████ and approximately 33 individuals will receive shares exceeding ██████.  Accordingly, the benefit provided to the named and opt-in Plaintiffs is considerable given the risks of no recovery.

The second Ramey factor looks at the value of the services provided on an hourly basis. Whitlock, 2015 WL 9413142, at *8.  This is essentially the same, and serves the same purpose, as the lodestar analysis.  Dick, 297 F.R.D. at 300.  As a preliminary matter, however, "a lodestar analysis is unnecessary if the fee does not appear to be excessive as a percentage of the recovery."  Id.  Regardless, the value of the services provided here dwarfs the hourly rate.  Class Counsel extensively litigated this lawsuit for more than two years.  Between the two law firms, Class Counsel has billed approximately 647 hours on this case.  Lichten Decl. at ¶ 24; Taylor Decl. at ¶ 5. Thus, an award of ██████ equates to an hourly fee of ██████ per hour.  Given the experience and expertise of Class Counsel, this is far below what similarly-experienced counsel would be paid for their services.  See Walls, 2016 WL 6078297, at *5 (approving hourly rates ranging from $220 to $700).

The third factor further supports the requested fee because Class Counsel provided their services on a contingent fee basis.  Indeed, courts in the Sixth Circuit recognize that working on a case on a contingent basis supports the reasonableness of attorney's fees because "contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery."   Sprint Commc'ns Co. L.P., 297 F.R.D. at 300 (quoting In re Telectronics Pacing Systems, Inc., 137 F.Supp.2d 1029, 1043 (S.D.Ohio 2001).  Other courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." Wells v. Sullivan, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." In re Abrams, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk."  Id.

In this case, Plaintiffs' Counsel would not have recovered any of their fees and out-of-pocket costs had they not obtained a settlement or prevailed at trial. This factor thus weighs in favor of the requested fees because Plaintiffs' Counsel assumed significant risk of nonpayment when they agreed to represent Named Plaintiffs on a contingency fee basis. See DeHoyos v. Allstate Corp., 240 F.R.D.269, 330 (W. D. Tex. 2007) (quoting In re Prudential-Bache Energy Income P'ships Sec. Litig., 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.").

The fourth Ramey factor also supports the requested fee because there is a significant public interest in encouraging attorneys to take on wage cases of workers who could not otherwise

afford to bring a lawsuit on their own.  "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions ... benefits society."  In re Cardizem, 218 F.R.D. at 534. Individual plaintiffs in this case would perhaps receive only a small recovery, with some financially unable to pursue such an action on their own. Many class members might have received nothing had this settlement not been reached. "Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process" and should be rewarded for such efforts.  In re Rio Hair Naturalizer, 1996 WL 780512, at *17.

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would not be able to find competent counsel to represent them. The risks Plaintiffs' Counsel undertook were real, and the resources that Plaintiffs' Counsel dedicated to this action meant that such resources were not available to other cases. Plaintiffs' Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the FLSA Settlement Members, supports the requested fees and costs.

The fifth and sixth Ramey factors further support the requested fee because this matter was inherently complex and Class Counsel's skill and experience brought considerable benefit to the named and opt-in Plaintiffs.  In this case, Plaintiffs and Defendants agree that there are numerous disputed issues of fact and law, including, specifically, whether Plaintiffs and the FLSA Settlement Members were misclassified as independent contractors and entitled to overtime compensation. Defendants would also contest the number of overtime hours worked.  Defendants have also asserted that maintaining certification would be difficult.  The wage and hour issues in this litigation are governed by the highly technical federal FLSA law and regulations. Plaintiffs' Counsel focus their practices in this highly technical area and have litigated numerous cases under these wage and hour laws on both an individual and class/collective action basis. See Lichten Decl.

25

¶¶ 2-4; Taylor Decl. ¶¶ 4. Plaintiffs' Counsel thus had the requisite skill to perform the legal services required in this complex litigation.

Furthermore, Class Counsel have been appointed counsel in dozens of class actions and have successfully settled or obtained favorable judgments in many of those cases.  Id.  Indeed, a number of courts have commented upon the experience of Lichten & Liss-Riordan, P.C. in the field of wage and hour litigation.  See, e.g., Scovil v. FedEx Ground Package Sys., Inc., 886 F. Supp. 2d 45, 47 (D. Me. 2012) (""Harold Lichten of the firm of Lichten & Liss–Riordan, P.C. has extensive experience in class action litigation, employment litigation….").  Counsel have shown their ability by achieving the excellent result obtained for the FLSA Settlement Members in this case. The experience, reputation, and ability of Plaintiffs' Counsel, therefore, supports the requested fee award.

Accordingly, the fees approved in similar cases further support the requested fee here.

## 2. An Award Based on a Percentage of the Fund is Fair and Reasonable.

A one-third attorneys' fee is reasonable in actions of this nature.  The Sixth Circuit has permitted fee awards ranging from 10 to 50 percent. Walls v. JPMorgan Chase Bank, N.A., 2016 WL 6078297, at *5 (W.D. Ky. Oct. 14, 2016) (citing Clevenger v. Dillards, Inc., 2007 WL 764291 (S.D. Ohio Mar. 9, 2007) (finding 29 percent fee to be "modest and ... below what is often awarded by district courts in th[e Sixth] Circuit" and citing various cases in support of that conclusion)).  Here, Class Counsel seeks a fee of one-third, or ██████, is fair and reasonable.

In fact, courts in this Circuit and across the country have awarded a one-third fee in other class and collective actions. See In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002) (concluding that a district court's attorney fee award of 36% of a class action settlement fund was not an abuse of discretion); Yarrington v. Solvay Pharm., Inc., 697 F. Supp. 2d 1057, 1061 (D.Minn.2010) (finding that an award of 36% of a class action settlement fund was "in line with

the range of fees approved by the Eighth Circuit"); Huyer v. Wells Fargo & Co., 314 F.R.D. at 629

(approving attorneys' fees of 33 1/3% of total settlement fund); Wineland, 267 F.R.D. at 677

(approving attorneys' fees of 33 1/3% of total settlement fund of $6.7 million, plus $150,000 in

costs, in FLSA collective action on behalf of class approximately 11,400 convenience store

employees); Vela v. City of Houston, 276 F.3d 659, 681 (5th Cir. 2001) (noting fee awards

generally ranging from 35% to 40% are common in cases taken on a contingent fee basis).[10]  Fees

within this range are "presumptively reasonable." Vaszlavik v. Storage Tech. Corp., 2000 WL

1268824, *4 (D. Colo. March 9, 2000).

Here, Plaintiffs' Counsel seek one-third of the Gross Settlement Amount as fees. As

described above, this is well within the percentage range approved in similar cases. Further, the

requested one-third of the Gross Settlement Fund includes the costs incurred by Plaintiffs'

---

[10] See also Bryant v. United Furniture Indust., Inc., 2017 WL 639320, at *4 (N.D. Miss. Feb. 16, 2017) ("awards commonly fall between a lower end of 20% and an upper end of 50%"); Chieftain Royalty Co. v. Laredo Petroleum, Inc., 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases."); Decohen v. Abbasi, LLC, 299 F.R.D. 469, 482-483 (D. Md. 2014) (Awarding one-third of $3,050,000 settlement fund, which amounted to a 3.9 multiplier); DeWitt v. Darlington Cty., S.C., 2013 WL 6408371, at *9 (D.S.C. Dec. 6, 2013) (finding one-third fee is customary in class litigation); Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011) (Analyzing cases from district courts throughout the country in common fund cases where attorneys' fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund," and noting that most of the cases awarded attorneys' fees at the level of 33.3% of the common fund.); Clark v. Ecolab, Inc., 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (Approving attorneys' fees of $2 million from the $6 million common fund in a FLSA collective action and noting that attorneys' fee percentages of one-third are "reasonable and consistent with the norms of class litigation in [the Second] circuit."); Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157, at * 2 (M.D.N.C. Jan. 10, 2007) (Noting, "in this jurisdiction, contingent fees of one-third (33.3%) are common."); Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins., 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); Enter. Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 249–50 (S.D. Ohio 1991) ("The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created.").

Counsel. See Whittington v. Taco Bell of Am., Inc., 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."). Thus, the customary fee factor supports the requested fee award.

### 3. Using the Lodestar as a Crosscheck Further Demonstrates that the Requested One-Third Fee is Fair and Reasonable.

This Court may use the lodestar method as a way to check of the reasonableness of the fee requested under the percentage of a common fund.  Dick, 297 F.R.D. at 298  "Under the "lodestar" method, the hours reasonably expended by an attorney are multiplied by a reasonable hourly rate of compensation."  Id. (citing Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir.1999). "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee." Kay Co. v. Equitable Prod. Co., 749 F. Supp. 2d 455, 470 (S.D.V.W. 2010); In re Xcel Energy, Inc., 364 F. Supp. 2d at 999 (approving multiplier of 4.7); In re UnitedHealth Grp. Inc. S'holder Derivative Litig., 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying 2.75 multiplier); Yarrington v. Solvay Pharm., Inc., 697 F. Supp. 2d 1057, 1065 (D. Minn. 2010) (finding 2.26 multiplier appropriate); In re Monosodium Glutamate Antitrust Litig., CIV. 00MDL1328PAM, 2003 WL 297276, at *3 (D. Minn. Feb. 6, 2003) (using multiplier of "slightly less than 2").  Here, however, Class Counsel requested recover accounts for only approximately one-third of their reasonable hourly rates.

Class Counsel have logged approximately 647 hours litigating this case. Lichten Decl. ¶ 25; Taylor Decl. ¶ 5.  Based on reasonable hourly rates, Plaintiffs estimate that they have generated approximately ███████ in attorneys' fees. Id.  Under a lodestar cross check, therefore, a one-third fee request in this case amounts to a negative multiplier of one-third of the fees they

have generated in this case.  A negative multiplier is a strong indication that the requested fee is indeed fair and reasonable.  Walls, 2016 WL 6078297, at *6 (citing Dick, 297 F.R.D. at 300).[11]

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: 1) granting approval of the proposed Settlement Agreement; 2) approving attorneys' fees and costs in the amount of one-third (1/3) of the Total Settlement Amount; 3) approving the distribution of service awards to the named Plaintiffs as described above; 4) approving the plan of notice to the opt-ins, including approving the proposed Notice; and (5) dismissing this claims of the Settlement Class Members with prejudice against Defendant.  See Proposed Order (attached as Ex. E).

DATED:        December 14, 2018            Respectfully submitted,

CRAIG WILLIAMS, JOHN WILLIAMS,
and FRED BERRY, et. al., individually and on
behalf of all others similarly situated,
By their attorneys,

/s/ Benjamin J. Weber
Harold L. Lichten (admitted pro hac vice)
Benjamin J. Weber (admitted pro hac vice)
729 Boylston Street, Suite 2000

---

[11] In addition, Class Counsel's requested one-third fee is reasonable given that counsel will recover their costs incurred in litigating this lawsuit from the requested fee.  Indeed, the FLSA provides for the reimbursement of costs.  See 29 U.S.C. § 216(b).  Accordingly, "[u]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses."  In re Cardizem CD Antitrust Litig., 210 F.R.D. 508, 535 (E.D. Mich. 2003).  In this case, Class Counsel have paid out approximately $6,200 in expenses for filing fees, travel, and mediation expenses.  Lichten Decl. at ¶ 25; Taylor Decl. at ¶ 6.  All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement.

Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
bjweber@llrlaw.com

Trent Taylor (Kentucky Bar No. 94828)
Barkan, Meizlish, LLP
250 E. Broad St., 10th Floor
Columbus, Ohio 43215
614-721-4088
ttaylor@barkanmeislish.com

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that I conferred with counsel for Defendants regarding this motion and that Defendants assent to the relief requested herein.

DATED: December 14, 2018                    /s/ Benjamin J. Weber_____
                                            Benjamin J. Weber

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document has been served on counsel for all parties through the ECF system on this date.

DATED: December 14, 2018                    /s/ Benjamin J. Weber_____
                                            Benjamin J. Weber